[Filed January 3, 1888.]

## JAMES A. BUCHANAN, RESPONDENT, *v.* GEORGE A. BECK, APPELLANT.

ACTION—MONEY HAD AND RECEIVED FOR.—In order to maintain an action for money had and received by one for the use of another, the complaint must plead facts showing that the money justly belonged to the plaintiff.

SAME.—Proof that the money legally became the property of the defendant would defeat the action, unless the plaintiff could show that by a subsequent arrangement the money was still his, and in order to make such proof available the facts relied upon must have been pleaded.

NONSUIT—WHEN GRANTED.—The testimony submitted in this cause was not sufficient to have been submitted to the jury under the pleadings, and a nonsuit should have been granted.

APPEAL from Multnomah County.  Reversed.

*George W. Yocum,* and *R. & E. B. Williams,* for Appellant.

*Zera Snow,* for Respondent.

THAYER, J.—This case was begun in the Justice's Court for North Portland precinct in said county.  The respondent filed in that court a complaint against the appellant, in which he alleged "that in the month of July, 1886, the defendant [appellant herein] had and received of and from the plaintiff [respondent herein], and for and to plaintiff's use and benefit, one hundred and twenty-five dollars, in manner as follows: In the month of July, 1886, plaintiff paid over to the defendant the sum of one hundred and twenty-five dollars, for and in consideration of which defendant promised to sell and deliver to plaintiff, within a reasonable time thereafter, an American horse, sound, and fit, and suitable for a lady's driving horse."  Then followed an alleged breach of the promise, and

refusal upon the part of the defendant to comply therewith, and demand for judgment for said sum of money. The appellant in his answer to the said complaint denied the receipt of said one hundred and twenty-five dollars for plaintiff's use or benefit; denied that plaintiff paid over to defendant said sum, or any sum, for or in consideration of which the defendant promised to sell or deliver to plaintiff any horse; denied in effect the breach of any promise made by him to sell and deliver to plaintiff the horse mentioned in the complaint, or any horse. But averred that he sold and delivered to plaintiff a horse, at the time alleged in the complaint, for the agreed price of one hundred and twenty-five dollars; that said sale was without warranty of soundness or other warranty, and that said horse was worth the sum of one hundred and twenty-five dollars.

No reply was filed on the part of the respondent, and the case was tried upon the above issues. Judgment was rendered against the appellant in the Justice's Court for the amount claimed. He appealed therefrom to the said Circuit Court, where the case was tried anew, and the same result followed, and he then appealed to this court. Jury trials were had in both courts. The appellant claims that errors of law were committed in the trials of the case prejudicial to him, and upon which he relies for a reversal of the judgment. It appeared in evidence at the trial, from the respondent's own testimony, as shown by the bill of exceptions, that he negotiated with the appellant for the purchase of a horse, such as described in the complaint; that after stating to appellant the kind and style of horse he wanted to purchase, the appellant told him that he thought he had a horse that would suit him, and described him as possessing the qualities the respondent had mentioned as desirable. The latter asked him the price, and the former said one hundred and twenty-five dollars, saying at the same time, "That is not too much, is it?" To which the respondent said, "No; not if he is the horse you describe, and is sound." The appellant said he was; was all right; and that he would send the horse over to the respondent to look at and inspect. The next day a man came over from East Portland, where the appel-

lant resided, and where he was engaged in the livery business, to Vancouver Barracks, where the respondent was stationed, he being an officer at the post there, and brought with him the horse. The man introduced himself to respondent as "Look," whom appellant had sent over with the horse about which respondent had talked with appellant the day before. Respondent looked at the horse, which looked all right, and apparently answered respondent's purpose. He then drove him up and down the Barracks Avenue, and he appeared to go all right; that respondent noticed when he stopped that the knee advanced one foot ahead of the other—a forward foot—and called Look's attention to it. Look said it was only the position in which the horse stopped, and assured respondent that he was all right, perfectly sound, and without a blemish. Respondent told Look if the horse were not sound he did not want him, as he wanted a horse his wife could drive at once, and he would not drive a lame horse.

After some further talk of the same kind respondent told Look to tell appellant that he would take the horse. Look then left with the horse. The next day, which was July 30, 1886, the appellant came over with the horse. Respondent called his attention to the peculiarity of the horse advancing one foot, and the appellant said, "Yes, I meant to tell you that I took a small piece of gravel from his hoof." Respondent then said to him that if there was anything the matter with the horse he did not want him; that he wanted a horse that his wife could drive at once. The appellant assured him that the horse was all right; that it would not interfere with his driving a particle; that he was sound, and respondent would so find him. The horse did not appear then to be lame; appeared to drive all right. Respondent then told appellant to take the horse to the government stable, pointed it out, and gave him a check for one hundred and twenty-five dollars; that he considered at the time that he "owned the horse, and so regarded himself."

The respondent's counsel then proposed to prove certain matters which took place subsequent to the delivery of the horse, and giving of the check in payment thereof, which took

place between respondent and said Look, and also with the appellant, to which the appellant's counsel objected as incompetent and immaterial, and because there was no evidence tending to prove that Look had authority to act for appellant after the delivery of the horse. The court overruled the objection, and said counsel excepted to the ruling. This presents the main question in the case. The appellant's counsel insist, that in view of the issue tendered by the complaint, the respondent had no right to show any subsequent arrangement between the parties, after the completion of the sale of the horse, as a ground of appellant's liability; that such matter must be alleged in order to be admissible in proof. It has been held in a great majority of the States that the mode of pleading heretofore known as "common counts" may still be employed, notwithstanding the adoption of the reformed system. In this State, however, the right is denied. This court, in *Bowen* v. *Emmerson,* 3 Or. 452, held that the use of the general counts in assumpsit was wholly inconsistent with the theory of the Civil Code. The principle of that decision would not prevent a plaintiff from maintaining an action for money had and received for his use, provided he allege facts in his complaint sufficient to show that the money paid to the defendant justly and equitably belonged to the plaintiff. Proof that the money legally became the property of the defendant would defeat the action, unless the plaintiff was able to establish that, through some subsequent arrangement, the money was still his.

In order, however, to enable himself to make such proof, the fact would have to be alleged. He could as well have neglected to allege any facts under which the money was paid, as to have neglected to allege those he was permitted to prove against the appellant's objection, and which, he claims, established his right to the money. It would, so far as I am able to see, have been as tolerable for the respondent to have gone into court and only have alleged the payment of the one hundred and twenty-five dollars to and for his use and benefit, and have undertaken to establish it by the evidence in the case, as to have alleged what he did. He alleged sufficient, no doubt, to establish a

*prima facie* case; but when it appeared that the money was paid for the horse, which was accepted and received by the respondent, and became his property, his case, as made in his complaint, was overthrown, and he was compelled to go outside of what he had alleged in order to sustain it. The Code will not permit this, whatever may have been the rule at common law. This conclusion may be thought to be a very slight ground upon which to reverse a judgment that has been rendered upon the verdict of a jury, but the point comes squarely before the court, and however much we might dislike to dispose of the case in that way, yet I do not see how such a result could be avoided if there were no other questions in the case.

There is, however, another matter to be considered. It appears that after the respondent rested his case, the appellant's counsel moved for a nonsuit, which motion having been overruled by the court, an exception was saved to the ruling, and which, to my mind, presents a more serious question than the former. The testimony upon the part of the respondent that was objected to, and upon which he bases his right to recover in the action, shows that the horse purchased, which is described as a brown horse, named "Major," became, soon after the purchase, so lame that he could not be used; that the respondent thereupon complained to the appellant on account of his condition. The appellant advised that the respondent turn the horse out, assuring him that the animal would soon be all right. The respondent objected to it, as he had purchased him for immediate use, and asked the appellant to let him have a horse to drive temporarily, to which the latter consented, and sent the respondent over another horse named "Doc"; but "Doc" proved to be lame also, and the respondent returned him. After that time, and about the last of August or forepart of September, respondent saw appellant at his stable in East Portland, and told him again about "Major's" condition; appellant again advised turning him out, but the respondent would not consent to it, and finally said to the appellant that he was dissatisfied with the horse and asked him what he was going to do about it, to which the appellant replied, "Well, I guess I will have to get

you another horse." Respondent said, "All right," and appellant then said, "I will send a man over to you." That within a day or two, Look, the man who first brought "Major" over, came to respondent at the Barracks, and said to him: "Mr. Beck says you are dissatisfied with the brown horse," referring to "Major," "and I came over to see you about it." Respondent explained to Look the trouble, and the latter, who it appears is a professional horse trader, said he knew just the horse respondent wanted, and thought he "could trade for such a horse, and get him one that suited." Respondent told him all right, so that he got a horse he had bargained for and paid for. He also said, "Suppose if you take 'Major' away you bring me a horse that don't suit?" Look said, "I will keep at it until you are suited." Respondent said, "All right," and Look took the brown horse off, stating that he would be back in two or three days. He also said, in the course of the talk, that he knew of a four-year-old colt he thought he could get, but that respondent might have to pay fifty dollars more; the latter said "that was all right, if the colt suited."

Look did not come back for some time, and then did not bring a horse that suited, though as I understand the evidence, he traded off the brown horse. Afterwards he brought back another which did not answer, and subsequently another, but not such a one as respondent would accept. Finally he wrote respondent that he had another horse for him, but would not deliver it unless the latter would pay him fifty dollars for the trouble he had been to. This seems to have stopped affairs between respondent and Look, and the former renewed his complaint to the appellant, claiming that he had been acting with Look as appellant's agent. The appellant denied that Look was his agent, and insisted that he had nothing to do with Look's trading off "Major," or trading for the subsequent horses. At one of the times when Look took over a horse for respondent he told him that it could be sold for a hundred dollars, but could not be paid for until the spring following, to which respondent said, "If Beck will sign the note, all right." Look said, "Beck will not do that." After some negotiation and correspondence

between the parties, respondent and appellant, and their failure to adjust the matter, this action was commenced.

' There is a serious doubt whether the evidence tended to show that Look acted as agent for Beck in his efforts to get the respondent a horse that would suit him, but if he did, I cannot see how the evidence was admissible under the pleadings, or justified the conclusion of a rescission of the contract of the sale of the horse "Major." It is said by Chitty, in his work on Pleading, that "where a special contract is still *open*, and has not been rescinded by *mutual consent*, it is necessary to declare specially; as if a horse, etc., be sold with a warranty of soundness, although it be unsound, and the purchaser *immediately* offers to return it, he cannot recover back the price on the count for money had and received, if the vendor refuse to receive back the horse; for the warranty can only be tried upon a special count, unless there was an express stipulation to take back, or unless there was actual fraud; and in such case the count for money had and received is not maintainable, although upon the horse being tendered to the seller he stated that if the horse be unsound, he will take it back and return the money; provided, he denies the unsoundness, and does not take back the horse. If, however, either by virtue of an express stipulation in the original contract, the plaintiff was in a certain event entitled to rescind it, or it has been put an end to by the agreement of both parties, the common count may be supported to recover money paid on the contract. (1 Chitty on Pleading, p. 355.)

The same principle was maintained in *Dickenson* v. *Lane*, 107 Mass. 548. That was an action to recover back money paid for a horse sold with warranty. The plaintiff at the trial introduced evidence tending to show that the horse was returned by him to defendant; that after the return of the horse the defendant asked the plaintiff why he had returned him, to which the plaintiff replied that the horse was unsound, and demanded the return of his money paid for it; and that the defendant promised to send the money to the plaintiff the next day, but failed to do so. Ames, J., in delivering the opinion of the court, said that "the plaintiff's declaration charges that the defendant warranted the horse,

and that the warranty was broken. He rests his claim to recover back the purchase money upon no other ground. Upon the case presented by the declaration, if there was no warranty or no breach, the money was properly paid, and in equity and good conscience belonged to the defendant. The ruling which the plaintiff requested the court to make was sustantially that he should be excused from proving the vital element of his case, as he had seen fit to present it for trial. A subsequent agreement to rescind the original contract and to return the money was an entirely different matter, of which the declaration gave no intimation, and plainly was not allowable as a ground of claim in this action without amendment."

The correctness of the rule is unquestionable, and is sustained by the great majority of the modern authorities. Unless, therefore, the respondent's proof establishes that the original contract between the respondent and appellant was put an end to by the agreement of both parties, no cause of action was made out; but it does not do that. It nowhere appears that appellant agreed to take the horse "Major" back and cancel the sale, nor that the respondent desired him to do so. The latter's complaint was that "Major," on account of his lameness, did not answer his purpose, nor was he such a horse as he bargained for, and the former replied: "Well, guess I will have to get you another horse; I will send a man over to you." The respondent, according to his own testimony, assented to this. Then Look appeared again on the scene, not for the purpose of taking the brown horse back to appellant in rescission of the contract of sale, but evidently to assist the respondent in swapping off the horse and securing in exchange one that would answer the respondent's purpose. There is nothing in the evidence I can discover which indicates that the horse was to be delivered back to the appellant and accepted by him as his own property. It is unfortunate for the parties and the community that they have got the matter into the awkward fix it is in. It results from indecision. The respondent should have said to the appellant, when it was found that the horse "Major" continued lame, "Either take him back and pay back the money, or pay the difference between the value of the horse

as he is, and the value he would have had, if he had been as represented." Instead of adopting that course, however, he consented to Look's going into a scheme of swapping, apparently relying upon his assurance that he would "keep at it until respondent was satisfied." Look being an agent of the appellant did not change the character of the affair. There was no agreement between respondent and Look that the sale of the brown horse to the former should be rescinded, nor were the jury justified by the evidence in finding any such fact.

The finding of a jury upon a question of fact may be conclusive, but there must be proof of a cause sufficient to be submitted to them to render it so. A verdict, without evidence tending to prove the fact found by it, is against law. The trial by jury is an excellent institution when controlled by the rules of law; but if it were to become a mere arbitration, it would be pernicious. I am of the opinion that the respondent was not entitled to prove a rescission of the contract of sale of the horse, without alleging it in his pleadings. Also, that the testimony admitted for that purpose was not sufficient to be submitted to the jury, and that the plaintiff in the action should have been nonsuited upon motion of the defendant's counsel. The case will therefore have to be remanded to the Circuit Court, with directions to enter a judgment of nonsuit against the plaintiff therein. If the Circuit Court would have authority to allow the pleadings to be amended, I should be in favor of remanding the cause for a new trial, but as it is in that court upon appeal from Justice's Court, I apprehend the former court would not have such right.