Argued and submitted November 2, 1982, affirmed August 16, petition for rehearing denied November 22, 1983

**DAVIS,**
*Respondent on review,*

*v.*

**TYEE INDUSTRIES, INC. et al,**
*Petitioners on review.*

**(CA A20704; SC 28894)**

668 P2d 1186

Ridgway K. Foley, Jr., Portland, and Donald Joe Willis, Portland, argued the cause for petitioners on review. On the briefs were Katherine H. O'Neil, Donald Joe Willis, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Mark McCulloch, Portland, argued the cause for respondent on review. With him on the brief was Powers & McCulloch, Portland.

David R. Foster, Portland, filed a brief as amicus curiae for Oregon Association of Defense Counsel.

PETERSON, J.

* Tanzer, J., resigned December 31, 1982.

## PETERSON, J.

In *Adams v. Crater Well Drilling, Inc.*, 276 Or 789, 556 P2d 679 (1976), we upheld an award of punitive damages recovered incident to an assumpsit claim for money had and received because the defendant's conduct was "essentially tortious." 276 Or at 794. The case at bar also involves a claim for money had and received and the question presented relates to the necessary pleading foundation to recover punitive damages incident to such a claim. There was a verdict and judgment for the plaintiff for general and punitive damages. The Court of Appeals affirmed, *Davis v. Tyee Industries, Inc.*, 58 Or App 292, 648 P2d 388 (1982).

The issue involves a pleading question: In an action pleaded as an assumpsit claim for money had and received in which the plaintiff seeks punitive damages, what allegations must the complaint contain in order to support a recovery of punitive damages? We first examine the history of this form of action and its relation to claims for damages for tortious conduct.[1]

## I

## HISTORY OF ASSUMPSIT

The common law forms of action of debt, covenant and account were conceived as property claims and were ill adapted to deal with the numerous ways in which claims for breach of contract, express or implied, could arise. Over a period of centuries the English courts developed the assumpsit form of action. Special assumpsit permitted damages for the breach of a simple contract. The next creation was general assumpsit, which provided a remedy in a variety of situations in which, although there was no contract between the parties (express or implied in fact), the law would create a promise to pay in order to avoid unjust enrichment. Thus, if someone paid money to the defendant that should have been paid to the plaintiff, the law created an implied-in-law "contract" which required the defendant to pay the money to the plaintiff. Often referred to as indebitatus assumpsit or quasi-contract, the

---

[1] For historical background we draw upon D. Dobbs, Handbook of the Law of Remedies §§ 4.2, 5.15 (1973); J. Koffler & A. Reppy, Common Law Pleading §§ 162-183 (1969); and W. Prosser, Handbook of the Law of Torts § 94 (4th ed 1971).

actions had an equitable character because, under the circumstances, "the defendant * * * is obliged by the ties of natural justice and equity to refund the money." *Moses v. MacFerlan,* 2 Burr 1005, 97 Eng Rep 676 (KB 1760).

At least three classes of "common counts" of general assumpsit were created, including (1) the indebitatus counts, (2) the value counts, and (3) account stated. Major indebitatus counts included money paid to the defendant's use, money had and received, and goods sold and delivered. Major value counts included quantum meruit and quantum valebat.

The money count for money had and received came to be used as a vehicle to recover damages for torts. If one by fraud, duress, trespass or other tort obtained another's property and converted it or sold it to another, it was said that the plaintiff could "waive" the tort and sue in assumpsit.[2]

---

[2] Professor Dobbs described the doctrine as follows:

"If the defendant converts chattels of the plaintiff and sells them, he is enriched by the sum he receives from the sale. It has usually seemed intolerable to allow a tortfeasor to profit from his tort, at least where it was a bad faith one, and for this reason the plaintiff has an appealing claim against the converter for the proceeds of the sale. In the great majority of cases the action of conversion, measuring damages by market value or special value to the plaintiff, will provide a recovery for the plaintiff that is equal to, or perhaps even greater than, the benefits gained by the defendant from the conversion and sale of the plaintiff's goods. But this is not always so. The converter may sell the chattel as an advance over market price, or he may be selling in a market that has risen since the time of conversion. In these circumstances a recovery that gives the plaintiff only the value of the chattel at the time of conversion still leaves the converter with a profit. This has seemed to the law to involve 'unjust enrichment' of the converter, and to prevent it, the law allows the plaintiff to recover not merely compensation for his loss, but all of the defendant's gain as well. For example, if the defendant converts a gold watch worth $100 and sells it for $200, the plaintiff has only lost $100; but to prevent unjust enrichment he is allowed to recover the entire $200. The plaintiff's recovery is usually called restitutionary here and the principle is obviously quite different from the principle of compensation for a loss.

"The principle of preventing unjust enrichment in this manner did not spring full blown into the legal world. It developed instead from the use of fictions, which in turn left a certain amount of troublesome intellectual debris in their path. The central fiction was that the plaintiff whose property had been converted could 'dispense with the wrong, and suppose the sale made by his consent.' This fiction looks at the conversion of plaintiff's chattel and its subsequent sale as if the whole thing were done by agreement of the plaintiff and defendant. If such a sale of the plaintiff's chattel *had* in fact been agreed upon, it would have been tacitly understood by the parties that defendant would give the proceeds of the sale to the plaintiff. By going through this sort of fantasy the common law courts were able to think of a tortious conversion of a chattel as if it were all a matter of contract, at least if the plaintiff preferred to look at it this way. This is the famous waiver of tort and suit in assumpsit. Because it was in theory based upon an implied

"Thoughts much too deep for tears subdue the Court When I *assumpsit* bring, and godlike waive a tort." John Leycester Adolphus, *The Circuiteers,* 1821, reprinted in 1 L Q Rev 232 (1885)[3]

This led many lawyers to sue in assumpsit rather than in tort seeking a more favorable measure of damage, a longer statute of limitations, more liberal joinder of causes of action, or a lesser burden of proof.

Pleading a claim in assumpsit does not transform a tort into a contract. Professor Corbin wrote:

"In all cases where a tort is waived, there is in fact no contract. The cause of action is a tort, and the tort exists as the cause of action and must be proved as the cause of action from first to last. No trick or legerdemain on the part of the plaintiff can change the tort into a contract. Neither can the law do this. The law may allow new forms of action, and may call things by new names, but it cannot turn a theft or other conversion of goods into an innocent agreement to sell and to buy. The *assumpsit* alleged in these cases is a mere fiction and is not the cause of action. Professor Kenner argues convincingly that the fiction should never be used *to deny a remedy,* overthrowing several cases where it was so used. In like manner, it is submitted, the fiction should not be used *to enlarge a right.* The fact that it has been used to dodge the rule that a personal action dies with the person, or to expand the right of set-off which the common law technically and inconveniently limited, is no ground for using it to nullify a legislative act based on sound public policy. It has often been held that in other sorts of quasi-contracts, the *contractual* period of limitation does not apply. Perhaps in those cases the tort limitation could be no more logically applied than the contractual limitation. But in the cases here considered there is a recognized tort, it is the real cause of action, and the tort limitation should control." Corbin, *Waiver in Tort and Suit in Assumpsit,* 19 Yale L J 221, 235-36 (1910). (Emphasis in original; footnotes omitted.)[4]

---

promise, this kind of claim is also called a quasi-contract claim." D. Dobbs, Remedies § 5.15, at 414 (1973). (Emphasis in original; footnotes omitted.)

3

Supreme we are in our dominion
Evidenced by each opinion.
Ceaselessly rejecting rumor
Alas, our prose, devoid of humor.

[4] This appeal presents no questions whether the burden of proof, statute of limitations or measure of damages are different if a tort claim is pleaded in assumpsit.

Assumpsit pleadings may be simple and short. 2 Am Jur Pleading and Practice Forms Annotated 725 (1967) (Form 11) (Revised Volume), gives this suggested money had and received pleading form:

"1. Defendant is indebted to plaintiff in the sum of $___ for money had and received by defendant for the use of plaintiff.

"2. No part of said sum of $___ has been paid, although plaintiff has demanded the same from defendant."

*Compare* Form 8 of the FRCP Appendix of Forms, which lists this form of complaint for money had and received:

"1. Allegation of jurisdiction.

"2. Defendant owes plaintiff ten thousand dollars for money had and received from one G. H. on June 1, 1936, to be paid by defendant to plaintiff."

Oregon, in its first pleading statute, required the complaint to contain:

"A plain and concise statement of the facts constituting the cause of action * * *." The Codes and General Laws of Oregon § 66.2 (Hill ed 1885).

In 1869, this court held that the common law pleading of assumpsit was inconsistent with the then new code pleading requirement that facts be pleaded. *Bowen v. Emmerson,* 3 Or 452 (1869), held this assumpsit pleading to be legally insufficient: "On or about the eighteenth day of February, 1868, plaintiffs sold and delivered to the defendant 4,000 lbs. of flour, and that the same was worth $212." *Id.* In *Buchanan v. Beck,* 15 Or 563, 566, 16 P 422 (1888), the court referred to *Bowen v. Emmerson, supra,* as holding that "the use of the general counts in assumpsit [is] wholly inconsistent with the theory of the civil code." In 1905 the *Buchanan* and *Bowen* holdings were disapproved. *Keene v. Eldriedge,* 47 Or 179, 182, 82 P 803 (1905), held that "in the absence of a motion to make the pleading more definite and certain, * * * the averment that defendant * * * received from the persons named the money in question, belonging to and on account of plaintiff, states facts sufficient to constitute a cause of action."

This court has continued to recognize and enforce assumpsit actions. In *Snow v. Tompkins,* 205 Or 60, 286 P2d 119 (1955), the complaint alleged a simple common law

assumpsit count for money had and received. No punitive damages were sought. At trial, defendant objected to any evidence of fraud on the ground that fraud was not pleaded. The trial court overruled the objection, saying:

"The defendant has answered to that second amended complaint without demurring to it; defendant concedes that the second amended complaint states a good cause of action, but objects to the introduction of evidence as to fraud for the reason that fraud is not pleaded in its specifications in detail, as required in an action for fraud.

"I have come to the conclusion that inasmuch as the second amended complaint states a good cause of action not being attacked by the defendants, anything is admissible under that complaint which would give rise to an implied promise to repay the money held by the defendants.

"Had the defendants attacked the complaint by a motion or demurrer, it would have been construed most strictly against the pleader, but now it comes before us on the objection to introduction of evidence. Every intendment is given to the complaint to support it, but that is immaterial, however, as the allegation of a good cause of action is admitted. It only goes to the introduction of the evidence, and I hold that the evidence is admissible as received as the evidence of fraud."[5]

We affirmed, saying:

"The authorities in this state sustain the proposition that when the defendant has received money from plaintiff which he should not in equity and good conscience retain, a promise to pay is implied and the plaintiff may waive the tort and sue in assumpsit for money had and received and need no longer allege any promise to repay the money wrongfully withheld. In this case and in the absence of any motion to make more definite and certain or of any demurrer, we hold that the complaint in the pending case was sufficient and the court did not err in submitting the issue of fraud to the jury. * * *." 205 Or at 67.

## II
## ADAMS v. CRATER WELL DRILLING

This court has held that where a contractual relationship exists between persons which creates a duty, the

---

[5] The quoted language is taken from pages 13-14 of the appellant's brief in *Snow v. Tompkins,* 205 Or 60, 286 P2d 119 (1955).

violation of which constitutes a tort, a party may recover money wrongfully obtained or withheld either in a tort action or by suing in assumpsit. *Snow v. Tompkins, supra,* 205 Or at 65-66, is illustrative. Not until *Adams v. Crater Well Drilling, Inc.,* 276 Or 789, 556 P2d 679 (1976), however, did we consider a claim of punitive damages in an assumpsit case. In *Adams,* the plaintiff and the defendant had an agreement that the defendant would drill a well at a rate of $4 per foot for soft rock, and $8 per foot for hard rock. The well was drilled to a depth of 500 feet, and defendant's charge was based upon its claim that 437 of the 500 feet drilled was hard rock. Plaintiff disagreed, and paid only $2,000, the amount which would have been due for drilling 500 feet in soft materials at the contract rate of $4 per foot. The defendant insisted upon payment of the full amount billed. Plaintiff paid defendant the balance "under protest in order to avoid litigation," 276 Or at 789, and thereafter sued for general and punitive damages. The plaintiff's complaint alleged the foregoing facts and that the defendant falsely, knowingly and willfully misrepresented that drilling took place in hard rock.

At the beginning of trial the defendant demurred to the plaintiff's complaint asserting (as had the defendants in *Snow v. Tompkins, supra*) that no cause of action was stated. The trial court agreed that no claim for fraud was alleged because the plaintiff had not paid the money in reliance upon the defendant's misrepresentations, but nonetheless overruled the demurrer, opining that the allegations stated a claim in assumpsit for money had and received.

The jury returned a verdict in the amount of the overcharge and for punitive damages. The defendant appealed, claiming (1) that the complaint failed to state a cause of action, and (2) that the award of punitive damages was improper because punitive damages are not allowed in a contract action.

We affirmed. On the first question we stated:

"The complaint apparently was framed on the theory of an action for fraud. Assuming that the allegation of 'payment' is sufficient to constitute an allegation of reliance, the complaint would withstand a demurrer. However, the facts show that payment was not made in reliance upon defendant's misrepresentation but, according to plaintiff's own testimony, to avoid the trauma his wife would feel if an action were brought.

Therefore, plaintiff cannot recover on the theory of fraud and deceit.

"* * * * *.

"Taking into account these procedural moves and rulings, we regard the case as presenting on appeal the sole issue of whether there was evidence to sustain an action for money had and received. There was sufficient evidence to establish that at the time defendant threatened to bring action against plaintiff, defendant, through its agent, knew that the amount claimed exceeded the amount plaintiff owed for the work done. The evidence clearly establishes that plaintiff paid the amount demanded. The only remaining question is whether plaintiff's payment was made under circumstances which would entitle him to restitution.

"As a general rule money which is voluntarily paid with full knowledge of facts which would excuse payment cannot be recovered. Recovery of money paid is allowed, however, where payment is made as a result of fraud, mistake, duress or coercion. The threat of a civil suit alone does not constitute duress or coercion sufficient to permit recovery of money paid to avoid the litigation. However, if payment is made in response to a threat of civil proceedings and the threat is made 'without probable cause with no belief in the existence of the cause of action,' recovery in an action for money had and received is permitted." 276 Or at 792-94. (Footnotes omitted.)

On the second question—whether punitive damages are recoverable in a contract action—we held:

"Defendant finally contends that because punitive damages are not allowed in a contract action, they are improper in a money had and received action which arises out of a contractual transaction between the parties. However, this contention does not take account of the fact that defendant, *in threatening to sue knowing that he had no rightful claim, is a wrongdoer in a tortious sense.* That being the case, the same reasons for allowing punitive damages in actions brought to recover damages for tortious conduct should apply when the action is to recover payment made as a result of essentially tortious conduct. * * *." (Emphasis added.) 276 Or at 794.

*Adams* did not involve a punitive damage pleading question. The defendant did not claim that the punitive damage allegations were legally insufficient. The defendant's objection to punitive damages was that punitive damages are

not allowed in a contract action.[6] We held, in essence, that the plaintiff had pleaded and proved tortious conduct which allowed recovery of punitive damages.

## III
## PLEADING ASSUMPSIT AND PUNITIVE DAMAGES

As stated, Oregon has been a code pleading state since statehood. The general rule has been that a pleading must contain factual allegations which, if proved, establish the right to the relief sought.

This rule has been carried forward in the Oregon Rules of Civil Procedure. ORCP 18 A. reads:

"A pleading which asserts a claim for relief, whether an original claim, counterclaim, cross-claim, or third party claim, shall contain:

"A. A plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition."

The Comment to ORCP 18 states:

"The Council decided to retain fact pleading as opposed to notice pleading, i.e., to retain a requirement of fairly specific description of facts as opposed to adopting the less specific fact description allowable in federal courts. * * * The necessity of pleading ultimate facts retains the present Oregon requirements of pleading facts at a fairly specific level. * * *." F. Merrill, Oregon Rules of Civil Procedure: A Handbook 36 (1981).

We correctly held, in 1869 and 1888, that the common counts in assumpsit are inconsistent with code pleading requirements that the complaint contain a plain and concise statement of facts constituting the claim for relief or cause of action. In *Keene v. Eldriedge, supra,* we erred in straying from the holdings of *Bowen v. Emmerson, supra, Buchanan v. Beck, supra.* Asserting damages for a tort in an assumpsit complaint does not convert the tort into a breach of contract. The efficient resolution of cases, both in the pleading stages and in the trial stages, will be furthered by holding parties to the mandate

---

[6] On the question whether punitive damages are recoverable for breach of contract see *Farris v. U.S. Fid. and Guar. Co.,* 284 Or 453, 466, 587 P2d 1015 (1979); *Smith v. Abel,* 211 Or 571, 595, 316 P2d 793 (1957); *Weaver v. Austin,* 184 Or 586, 600, 200 P2d 593 (1948); *Harper v. Interstate Brewery Co.,* 168 Or 26, 120 P2d 757 (1942); *Osmun v. Winters,* 30 Or 177, 46 P 780 (1896); Hodel, *The Doctrine of Exemplary Damages in Oregon,* 44 Or L Rev 175, 196-99 (1965).

of ORCP 18 A., requiring allegations of the facts which constitute the claim for relief.[7]

■ As regards punitive damage claims, our precedents hold that if punitive damages are sought, facts must be alleged which, if proved, will establish the right to recover punitive damages.

In *McGill v. Huling Buick Company*, 259 Or 413, 487 P2d 656 (1971), the plaintiff sued an automobile dealer, and the complaint contained detailed allegations of fact concerning fraud that was practiced by the defendant upon the plaintiff. The plaintiff sought and recovered general damages and punitive damages. The defendant appealed, claiming that the allegations of the complaint were insufficient to support an award of punitive damages. Specifically, the defendant

---

[7] George Rossman, a long-time member of this court, then a circuit judge, described the common counts as a "wind-fall" to the harassed pleader. Rossman, *Plain and Concise Language*, 6 Or L Rev 293, 329 (1927).

J. Pomeroy, in Code Remedies § 438, 675-76 (5th ed 1929), said:

"I cannot, however, consistently with my very strong convictions, refrain from expressing the opinion that, in all these rulings [approving] the use of the common counts, the courts have overlooked the fundamental conception of the reformed pleading, and have abandoned its essential principles * * *. If the principles of pleading heretofore developed in the text are true expressions of the reformed theory, the legislature certainly intended that the facts constituting each cause of action should be alleged not as formulas, but in the ordinary language of narrative; and it is, as it appears to me, equally certain that the use of the common counts as complaint or petitions is a violation of these fundamental principles." *Id.* at 675, 676, § 438.

Another treatise writer opined:

"While all the common-law forms are abolished by procedural codes, and these common counts positively prohibited by the languages of the various practice codes, and the common counts are entirely out of harmony with all reformed systems of pleading; yet the courts in the various Code states have overridden the plain declarations and provisions of these various procedural codes, and by 'construction' have retained in the Code system of pleading the common counts. This has been done by a process of reasoning incomprehensible and inexplicable on any theory, except upon that the early judges, called upon to pass upon the point, were so ingrained with the principles of the common-law system of pleading—and possibly so violently prejudiced in its favor, that they could not fairly and intelligently apply the plain rules provided by the various procedural codes for determining the sufficiency of a pleading under the Code; and the later judges, brought up under the case system 'were such hide-bound worshippers of "precedents" (whether right or wrong on principle) that they could not break away from early erroneous rulings, and conform their decisions in the matter to the plain directions of the different codes of procedure." 1 J. Kerr, *A Treatise on the Law of Pleading and Practice* § 26, at 31-32 (1919).

*See also* Cook, *'Facts' and 'Statements of Fact,'* 4 U Chi L Rev 233, 235, 244-45 (1937).

contended: "nowhere in the complaint do the plaintiffs allege that the representations were willful, malicious or recklessly made, nor do they allege that they are entitled to punitive damages." 259 Or at 418. In affirming the judgment for the plaintiff, we held that if the complaint alleges facts which, if true, establish that the conduct of the defendant is so reprehensible that the award of punitive damages is proper, it is not necessary to allege that the conduct complained of was "malicious, wanton, or intentional." The court noted that no motion to strike or to make definite and certain had been made. 259 Or at 421-22.

*Holden v. Pioneer Broadcasting Co. et al,* 228 Or 405, 418, 365 P2d 845 (1961), represents the other side of the coin. It was a libel case involving publication in a newspaper, and the complaint alleged that the statements were made "wilfully, maliciously and wrongfully." This court upheld an order striking the punitive damage allegation from a complaint, saying:

"\* \* \* The allegations in the complaint do not purport to charge defendants with the intent to defame plaintiff. The recitation that the 'utterances and publication were made by defendants willfully, maliciously and wrongfully' is not to be construed as an allegation that defendants knew that the charges were false or that defendants were motivated by ill will in making the alleged defamatory statement. The allegation that the statement was made 'willfully, maliciously and wrongfully' is a mere conclusion of the pleader. The allegation is not sufficient to charge malice in fact." 228 Or at 418. (Footnote omitted.)

In *Cays v. McDaniel,* 204 Or 449, 457, 283 P2d 658 (1955), the plaintiff sought punitive damages against a car dealer for turning back the odometer mileage. We said:

"It is elementary that a complaint must allege facts sufficient to authorize the relief sought by a plaintiff. To be entitled to punitive damages in any case, it is necessary that plaintiff allege in his complaint the material facts justifying such allowance. If a plaintiff relies upon circumstances of aggravation as the basis of his claim for punitive damages, those circumstances must be alleged in the complaint. \* \* \*

"\* \* \* \* \*.

"However, as we stated in *Stark v. Epler,* supra, [59 Or 262, 266, 117 P 276 (1911)] 'the rules of pleading do not require that the allegations relating to exemplary damages should be set out separately from the other averments of the complaint,' as

is required with relation to special damages. Exemplary damages are so intimately connected with general damages that if the general allegations of the complaint are sufficient to show the wrong complained of was inflicted with malice or oppression or other like circumstances, the complaint will be deemed sufficient to authorize the infliction of punitive or exemplary damages."[8]

■■ Consistent with ORCP 18 A., we hold that whatever the theory of recovery, facts must be alleged which, if proved, will establish the right to recover. It is no longer permissible to veil the facts or theory behind a nonfactual pleading for money had and received and thereafter prove any state of facts which, historically, could support recovery on a theory of money had and received. The "common counts" are no longer permissible pleadings; the complaint must set forth "a plain and concise statement of the ultimate facts constituting a claim for relief." To the extent that *Snow v. Tompkins,* 205 Or 60, 286 P2d 119 (1955), and *Keene v. Eldriedge,* 47 Or 179, 82 P 803 (1905), are inconsistent with this holding, they are disapproved. We are not holding that the common count *remedies* are abolished. We only hold that a claim for relief must be asserted in accordance with ORCP 18 A.[9]

■ Where punitive damages are sought, the complaint should set forth the ultimate facts which are claimed to support the recovery of punitive damages. If, as here, the punitive damage claim is based upon tortious conduct, facts must be alleged which, if true, establish the tort and the right to punitive damages.

## IV
## RESOLUTION OF THIS CASE
We set forth the plaintiff's complaint:

---

[8] *Cays v. McDaniel,* 204 Or 449, 283 P2d 658 (1955), was overruled on other grounds in *Lewis v. Worldwide Imports, Inc.,* 238 Or 580, 582, 395 P2d 922 (1964).

[9] We emphasize that the holding of this case in no way limits the remedies which this court has repeatedly recognized, remedies often referred to as constructive trust, restitution, quasi contract or unjust enrichment.

We do not limit the right of a person to invoke any other assumpsit remedy such as quantum meruit. *See, e.g., Kashmir v. Patterson,* 289 Or 589, 616 P2d 468 (1980).

If a pleader is unsure which theory can be established at trial, note should be made that ORCP 16 C. authorizes inconsistent claims or defenses, alternative statements of fact, and separate claims or defenses, "regardless of consistency and whether based upon legal or equitable grounds or upon both."

"Plaintiff alleges as follows:

"I

"At all times herein defendant TYEE INDUSTRIES, INC., (hereinafter referred to as Tyee) is a Washington corporation duly organized by the laws of the state of Washington and doing business in the state of Oregon.

"II

"At all times herein defendant BRODIE HOTEL SUPPLY, INC., (hereinafter referred to as Brodie) is a Washington corporation duly organized by the laws of the state of Washington and doing business in the state of Oregon. Brodie is a division of Tyee.

"III

"Plaintiff has been a salesman for Brodie since approximately July of 1976. Plaintiff's earnings as a salesman for Brodie are in the form of commissions. These commissions are based on a percentage of the profit made by Brodie on the goods sold by plaintiff: the higher the profit margin, the higher the percentage of the profit margin earned as a commission.

"IV

"On or about the 31st day of December, 1980 at Portland, Oregon defendants became indebted to the plaintiff in the sum of $25,000.00 for money had and received by the defendants for the use and benefit of the plaintiff. This sum represents commissions earned by plaintiff from defendants but unpaid by defendants to plaintiff. Defendants have not paid this sum nor any part of it.

"V

"Defendants' conduct in failing to pay plaintiff the sum of $25,000.00 or any part of it has been willful, wanton, malicious, and in disregard of societal interests and the rights of the plaintiff. For this conduct defendants should be assessed punitive damages in the sum of $100,000.00.

"* * * * *.

"WHEREFORE plaintiff prays for a judgment in the sum of $25,000.00 general damages, $100,000.00 punitive damages, * * * and his costs."

The plaintiff's original complaint contained a fraud count and an assumpsit count. Punitive damages were sought in both

counts. Before trial, the plaintiff voluntarily withdrew the fraud count.[10]

Early on, the defendants filed a motion to strike the assumpsit punitive damage claim on these grounds (quoting from the defendants' motion):

> "* * * Plaintiff cannot recover punitive damages in a suit in equity. *Pedah Co. v. Hunt,* 265 Or 433, 509 P2d 1197 (1973). Though Plaintiff labels his Complaint, "Complaint at Law For Damages," and the First Count is an action at law, an action for money had and received is equitable in nature and rules of equity govern it. * * *."

The motion was denied.[11]

After plaintiff withdrew his fraud count he filed the amended complaint quoted above. The defendants did not object to the sufficiency of the allegations of paragraphs I and IV quoted above, nor did they move to strike the punitive damage allegations or to make them definite and certain, as permitted by ORCP 21 D., E. On the day trial commenced, the defendants orally objected to the punitive damage allegations as follows:

> "The other point I wanted to raise, Your Honor, was on the basis of punitive damages. * * * [I]t's our position, since the fraud claim is out, that that —
>
> "* * * * *.
>
> "* * * — has got to go out of this case, and the reason we state that is, one, this is an implied contract action, and, two, it's conclusory in nature and it simply can't state a claim for relief on — I would object to that and have — that it does not state a claim for relief, and have it stricken."

Although the plaintiff's complaint appears to be in assumpsit for breach of contract, the plaintiff's theory throughout has been that he waived the tort and sued in

---

[10] For a more complete summary of the history of the pleadings in this case see the opinion of the Court of Appeals, 58 Or App at 295, 648 P2d at 390.

[11] The motion was properly denied as to the grounds asserted. *See Rexnord, Inc. v. Ferris,* 294 Or 392, 396, 657 P2d 673 (1983) (overruling *Pedah Co. v. Hunt,* 265 Or 433, 509 P2d 1197 (1973)), and *Adams v. Crater Well Drilling, Inc.,* 276 Or 789, 793-94, 556 P2d 679 (1976) (in which we rejected the claim that damages for tortious conduct, duress, could not be recovered in an assumpsit action for money had and received.)

assumpsit.[12] Under the holding of part III above, the plaintiff's allegations were legally insufficient to state a claim for relief in fraud and were legally insufficient to support an award of punitive damages. No facts showing tortious conduct were alleged. For all that appears from the four corners of the plaintiff's pleading, punitive damages were being sought merely because the defendants intentionally and maliciously failed to pay commissions to the plaintiff. Unlike *Adams,* in which the complaint contained factual allegations which, if true, proved a tort and established a right to punitive damages, the allegations in the plaintiff's amended complaint appear to allege nothing more than a breach of contract.[13]

The plaintiff argues that the punitive damage allegations are sufficient and that "[a]t no time during the trial did defendants raise the question of the sufficiency of plaintiff's pleadings." Although we agree that defendants filed no written motion to strike based upon the premise that no tortious conduct had been alleged, the oral motion made at the beginning of trial adequately stated the defendants' position to the trial judge.

Even so, we decline to reverse the case on that ground. The first objection to the sufficiency of the punitive damage allegations on the ground that they were "conclusory in nature and * * * [do] not state a claim for relief" was on the day of trial. The Oregon Rules of Civil Procedure provide procedures for objecting to the sufficiency of pleadings before trial. Had the defendants filed a motion to strike on the ground that the punitive damage allegations were legally insufficient, ORCP 21 E.,[14] or a motion to make the pleading definite and certain,

---

[12] In a brief filed in this court the plaintiff states that "the separate elements of various torts existed and were proved, even though this does not seem to be essential under the law. Defendants misrepresented that the commissions paid to plaintiff fully compensated him for what he earned. Such misrepresentation probably amounted to the fraud alleged in plaintiff's original complaint, and to deceit * * *. Defendants' conduct also probably constituted a conversion, and was certainly wrongful and essentially tortious."

[13] Plaintiff has never claimed that punitive damages are recoverable for breach of contract. *See* n 6, *supra.*

[14] ORCP 21 E. provides:

"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 10 days after the service of the pleading upon such party or upon the court's own initiative at any time, the court may order stricken: (1) any sham, frivolous,

ORCP 21 D., the court would have been advised of the defendants' assertions. Had either motion been granted, the plaintiff normally would have been given an opportunity to replead in order to correct the pleading deficiency and allege facts, which, if proved, would establish the right to a punitive damage award. An oral motion made on the day of trial is not the preferred method of objecting to the legal sufficiency of pleadings.

 Since 1885 this court has adhered to the rule that if an objection to the sufficiency of a pleading is made for the first time at trial, and the objection is overruled or denied, on appeal the objection will be considered as if it had been made after verdict. *Specht v. Allen,* 12 Or 117, 122, 6 P 494 (1885). *Accord Western Feed Co. v. Heidloff,* 230 Or 324, 342-43, 370 P2d 612 (1962) (when objection to sufficiency of pleading is first made at trial by oral demurrer, which is overruled, the pleading is sufficient if the evidence establishes a right to recover). *See also Bade v. Hibbard,* 50 Or 501, 504, 93 P 364 (1908), and cases cited therein. The rule in Oregon is that when objection to the legal sufficiency of a pleading is first made at trial, where the defect in the pleading, even though material, consists of an omission to state a necessary fact and it appears that the necessary fact could have been added by amendment, the entire record will be examined. The determination of the sufficiency of the pleading is then made by looking at the sufficiency of the evidence to establish the claim rather than the sufficiency of the pleading. *Western Feed Co. v. Heidloff, supra,* 230 Or at 342-43. *Accord Spears v. Huddleston,* 265 Or 168, 178-79, 508 P2d 438 (1973) (objections first made at trial); *Mills v. Liquidators,* 206 Or 212, 216, 288 P2d 1060 (1956) (objection first made at trial); *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 215-19, 493 P2d 138 (1972) (objection first made on appeal).

We have therefore examined the record to determine whether there is evidence to support an award of punitive damages. As did the Court of Appeals, we find evidence in the

---

or irrelevant pleading or defense or any pleading containing more than one claim or defense not separately stated; (2) any insufficient defense or any sham, frivolous, irrelevant, or redundant matter inserted in a pleading."

ORCP 21 E. does not expressly provide for a motion to strike a paragraph within a complaint because the specific allegation is legally insufficient. A legally insufficient allegation within a complaint is, in effect, a nullity, and may be stricken as either frivolous or irrelevant. We note that ORCP 21 E. (2) expressly provides for striking "any insufficient defense."

record to support the award. *See* the Court of Appeals opinion, 58 Or App at 294-98, for a discussion of the evidence.

In summary, we hold:

1. ORCP 18 A. requires pleadings to contain allegations of fact which, if established, will support the relief requested.

2. If the victim of a tort seeks punitive damages the complaint should allege facts which, if true, establish the right to recover punitive damages.

3. A complaint in assumpsit for money had and received which contains no allegations of tortious conduct but which contains an allegation seeking punitive damages for wilful or malicious conduct is legally insufficient to support a claim for punitive damages.

4. If the defendants neither move to strike such a punitive damage allegation on the ground of insufficiency nor move to make the pleading definite and certain, an objection that the punitive damage allegations are legally insufficient first made at trial, if denied, will only be upheld after verdict if there is no evidence to support the verdict had the pleading been amended to conform to the proof to state a claim for punitive damages.

## V
## OTHER ISSUES

The defendants have renewed other claims of error which were presented to and considered by the Court of Appeals. We agree with the Court of Appeals analysis and holdings on the other claims of error.

The Court of Appeals is affirmed.