115 P.3d 943 (2005)
200 Or. App. 458
JANTZEN BEACH ASSOCIATES, LLC, an Oregon limited liability company, Respondent-Cross-Appellant,
v.
JANTZEN DYNAMIC CORPORATION, an Oregon corporation; MBK Northwest, a Washington limited partnership; and Circuit City Stores, Inc., a Virginia corporation, Appellants-Cross-Respondents.
0011-12284; A118541.
Court of Appeals of Oregon.
Argued and Submitted November 9, 2004.
Decided July 6, 2005.
William H. Walters, Portland, OR, argued the cause for appellants-cross-respondents. With him on the briefs were Bruce A. Rubin, and Miller Nash LLP.
William A. Drew, Portland, OR, argued the cause for respondent-cross-appellant. With *944 him on the briefs were Ingrid S. Sprangle, and Elliott, Ostrander & Preston, P.C.
Before EDMONDS, Presiding Judge, and WOLLHEIM and SCHUMAN, Judges.
EDMONDS, P.J.
This is an appeal from a judgment awarding plaintiff damages of $750,000 on its claim of assumpsit against defendants.[1] Plaintiff's claim arose from defendants' violation of a restrictive covenant that prohibited interference with the visibility of plaintiff's land from North Hayden Island Drive in Portland. The trial court concluded that defendants had been unjustly enriched as a result of their violation of the covenant, and, accordingly, awarded damages to plaintiff. Defendants appeal, and plaintiff cross-appeals. We reverse on appeal and therefore do not reach the cross-appeal.
We first discuss the procedural history of the case. Plaintiff initially brought claims against the defendants for trespass, conversion, violation of easement, unfair competition, and unjust enrichment. Plaintiff's operative complaint at trial, however, was its second amended complaint that alleged two theories of recovery: tortious interference with real property rights and assumpsit/implied contract. Before trial, plaintiff elected to pursue only its claim for assumpsit/implied contract. Following plaintiff's election, defendants moved before trial for judgment on the pleadings under ORCP 21 B. The trial court denied defendants' motion, and trial proceeded on plaintiff's claim for assumpsit/implied contract, resulting in the award to plaintiff.
Defendants' first assignment of error is dispositive of the appeal. They argue under that assignment that the trial court erred in denying their motion for judgment on the pleadings. ORCP 21 B provides that, after the pleadings are closed, "any party may move for judgment on the pleadings." On appeal, we accept the well-pleaded allegations of facts contained in plaintiff's claim for assumpsit as true and inquire whether those allegations alleged a claim in assumpsit as a matter of law. Slogowski v. Lyness, 324 Or. 436, 439, 927 P.2d 587 (1996).
The following facts are alleged in plaintiff's second amended complaint. Plaintiff owns a parcel of commercial real property in the Jantzen Beach area (Parcel A). Plaintiff bought Parcel A from Westwood Corporation, Developers & Contractors (Westwood) in April 1988. Westwood had purchased Parcel A from Hayden Corporation. As part of its purchase from Hayden Corporation, Westwood procured from Hayden a restrictive covenant that attached to land (Parcel B) owned by Hayden that was adjacent to Parcel A. The restrictive covenant document was entitled "Declaration of Building Restriction," and was recorded in Multnomah County. That document provides, in part:
"As a material inducement for Westwood to purchase [Parcel A], Hayden Corporation, hereby agrees and declares, on its behalf and on behalf of its successors and assigns, that no buildings or other improvements, excluding parking lot improvement, landscaping or parking lot lighting, shall be erected or constructed on [Parcel B] described in `Exhibit B' * * * east of the lines designated as the lines of future building wall and fascia on the plan attached hereto as `Exhibit C.'
"This declaration shall run with the land and be binding upon and insure to the successors and assigns of Hayden Corporation and Westwood Corporation."
In 1995, defendant MBK bought a portion of Parcel B that included the area subject to the restrictive covenant. MBK then entered into a ground lease with defendant Circuit City "to build, maintain, and occupy a 42,684 square foot building," half of which was built within the area subject to the restrictive covenant. MBK thereafter sold its interest in that portion of Parcel B to defendant Jantzen Dynamic. The gist of plaintiff's assumpsit claim is that the Circuit City building interferes with the visibility that the restrictive covenant protectsthat passing motor vehicular traffic on North Hayden Island *945 Drive will have an unrestricted view of Parcel A.
As pertinent to the issue under the first assignment of error, plaintiff's second claim for relief entitled "Implied Contract/Assumpsit" alleges:
"19.
"Defendant MBK had no right to build within the legally restricted area without Plaintiff's consent and release, and thus, wrongly warranted that Circuit City could build within that legally restricted area under the ground lease.
"* * * * *
"22.
"Approximately one half of the Circuit City Parcel, leased to Circuit City by MBK and Jantzen Dynamic (with the warranty that it could be used by Circuit City for construction purposes), falls within Plaintiff's legally restricted area.
"23.
"Neither MBK nor Jantzen Dynamic Corporation could lawfully authorize construction on that portion of the Circuit City Parcel within the legally restricted area, yet MBK did authorize such construction, Circuit City relied on Defendants' false authority, and built its building in violation of the [restrictive covenant]. As a result of Defendant MBK's actions, MBK and Jantzen Dynamic should compensate Plaintiff for the continuing usurpation of its property right.
"* * * * *
"26.
"Plaintiff has requested restitution from MBK and Jantzen Dynamic in the amount that they have unjustly enriched themselves on account of Plaintiff's property right. Defendants MBK and Jantzen Dynamic have refused to pay those benefits to Plaintiff.
"27.
"* * * Plaintiff seeks recovery of an amount representing the commercial value of the benefit wrongfully appropriated by Defendant, namely the commercial value Plaintiff could and should have received for the release of its building restriction from a commercial developer desiring to build on the Circuit City Parcel."[2]
In their motion for judgment on the pleadings, defendants acknowledged that the Circuit City building violated the restrictive covenant; however, they argued that, under Oregon case law, plaintiff's sole claim for relief was for violation of the restrictive covenant, the claim on which plaintiff did not proceed.[3] In other words, defendants contend that the facts alleged in plaintiff's assumpsit claim do not state a legally cognizable claim in assumpsit. Plaintiff counters that its claim in assumpsit is based on the unjust enrichment that defendants received as the result of their violation of the restrictive covenant and that, therefore, their allegations state a legally cognizable claim.
The issue framed by the parties' arguments presents a question of Oregon law regarding the common-law action of assumpsit. In Davis v. Tyee Industries, Inc., 295 Or. 467, 469-70, 668 P.2d 1186 (1983), the Supreme Court explained:

*946 "The common law forms of action of debt, covenant and account were conceived as property claims and were ill adapted to deal with the numerous ways in which claims for breach of contract, express or implied, could arise. Over a period of centuries the English courts developed the assumpsit form of action. Special assumpsit permitted damages for the breach of a simple contract. The next creation was general assumpsit, which provided a remedy in a variety of situations in which, although there was no contract between the parties (express or implied in fact), the law would create a promise to pay in order to avoid unjust enrichment. Thus, if someone paid money to the defendant that should have been paid to the plaintiff, the law created an implied-in-law `contract' which required the defendant to pay the money to the plaintiff. Often referred to as indebitatus assumpsit or quasi-contract, the actions had an equitable character because, under the circumstances, `the defendant * * * is obliged by the ties of natural justice and equity to refund the money.' Moses v. MacFerlan, 2 Burr 1005, 97 Eng. Rep. 676 (KB 1760).
"At least three classes of `common counts' of general assumpsit were created, including (1) the indebitatus counts, (2) the value counts, and (3) account stated. Major indebitatus counts included money paid to the defendant's use, money had and received, and goods sold and delivered. Major value counts included quantum meruit and quantum valebat.
"The money count for money had and received came to be used as a vehicle to recover damages for torts. If one by fraud, duress, trespass or other tort obtained another's property and converted it or sold it to another, it was said that the plaintiff could `waive' the tort and sue in assumpsit."
In this case, when plaintiff elected not to proceed on its claim for tortious interference with its real property rights and sought relief under its assumpsit claim, it is held to have waived the tort as described in Davis. Nonetheless, to state a claim in assumpsit, plaintiff must allege facts that support such a theory. In paragraph 27 of plaintiff's amended complaint alleges that defendants have been unjustly enriched because they "wrongfully appropriated * * * the commercial value Plaintiff could and should have received for the release of its building restriction from a commercial developer desiring to build on the Circuit City Parcel." The question becomes whether paragraph 27 alleges that defendants obtained and converted plaintiff's property interest arising from the restrictive covenant. See Davis, 295 Or. at 469-70, 668 P.2d 1186; see also McCarthy v. Tomlinson, 91 Or.App. 685, 687, 756 P.2d 687 (1988) (holding that the plaintiff's complaint was properly dismissed when it failed to allege that the defendants wrongfully appropriated the plaintiff's property).
To answer that question, we examine first the nature of the property interest that plaintiff claims defendants have appropriated. Plaintiff's property interest arising from the terms of the restrictive covenant, as alleged in its complaint, is appurtenant to Parcel A. It was created "to benefit the dedicator as the possessor of a particular tract of land." Sunset Lake v. Remington, 45 Or. App. 973, 977, 609 P.2d 896 (1980). Plaintiff can assert that interest only "by virtue of [its] ownership of the land." Braat v. Aylett, 278 Or. 549, 552, 564 P.2d 1030 (1977). Consequently, the property interest reflected in the restrictive covenant is not severable from the land, nor is it personal to plaintiff. Id.; see also Monese v. Struve, 155 Or. 68, 77, 62 P.2d 822 (1936) ("Rights conferred by an easement attach to the estate and not to the person of the dominant tenement"). Here, the appurtenant property interest that attaches to Parcel A is in the nature of a view easement across Parcel B because it permits Parcel A to be visible from North Hayden Island Drive.
Next, we examine the nature of the interference with plaintiff's view easement as alleged in plaintiff's complaint. Plaintiff's claim alleges an interference with a real property interest. Preliminarily, we note that the claim of assumpsit was developed in the law to avoid unjust enrichment where chattels had been converted. For example, if a defendant converted a gold watch worth *947 $100 and sold it for $200, the plaintiff could waive the tort and sue in assumpsit to recover $200, the amount by which the defendant had been unjustly enriched.[4] D. Dobbs, Handbook on the Law of Remedies § 5.15, 414 (1973). "Assumpsit" involving real property interests lies where the wrongdoer appropriates a tangible property interest in the course of a trespass to real property. The reasonable value of the property appropriated may be recovered based on the tort committed or under an implied contract theory to recover the amount of the unjust enrichment. Dobbs, Remedies § 5.9 at 372. For example, in Daniels v. Foster & Kleiser, 95 Or. 502, 504, 187 P. 627 (1920), the plaintiff alleged that the defendant "completely wreck[ed] and remove[d] the building * * * including the fixtures contained therein, and converted the same to his own use and benefit and erected in the place where said building stood its sign and billboard." Id. The Supreme Court held that the plaintiff could waive the tort and maintain an action for the value of the property even though the defendant had not sold and converted the property into money. Id. at 507, 187 P. 627. Rather, the plaintiff could recover under the theory of assumpsit if she could prove that the defendant "converted" the value of the leasehold interest to his own use. Id. at 508, 187 P. 627.
Here, however, defendants did not convert the value of plaintiff's view easement to their own use or sell it to a third party. Rather, according to plaintiff's allegations, defendant interfered with the physical space of the view easement to save and did not expend the money to obtain a release from the provisions of the restrictive covenant. The distinction is an important one. Where there is mere use of a property interest without the appropriation of tangible property during the trespass, the traditional view has been that assumpsit will not lie. Dobbs, Remedies § 5.9, at 372. The reason for the distinction appears to be based on the historical purposes for various claims for injury to real property at common law. A claim of indebitatus assumpsit existed to prevent the unjust enrichment arising from a taking or conversion of another's property such as occurred in Daniels, where the plaintiff alleged that the leased building was destroyed and replaced with a billboard. See also Hagberg v. Haas, 237 Or. 34, 37, 390 P.2d 361 (1964) (holding that the plaintiff sued in assumpsit when the complaint sought recovery of the reasonable value of timber removed by the defendant from the plaintiff's land). In each of those cases, there existed a tangible real property interest that had been entirely appropriated by the trespasser that was in addition to the invasion of the property itself. In contrast, where a real property interest was merely interfered with by a trespasser without an accompanying appropriation of tangible property, the remedies were limited to dispossession and damages flowing from the invasion. Dobbs, Remedies § 5.8 365. This case is more like the latter kind of cases than the former.[5]
Moreover, holding that a claim for assumpsit does not lie on the facts alleged by plaintiff is consistent with the measure of damages applicable to other kinds of cases involving interference with restrictive covenants. When a plaintiff asserts a claim for violation of an appurtenant restrictive covenant, damages are measured by the diminution of value to the dominant estate. Drulard v. Le Tourneau, 286 Or. 159, 169, 593 P.2d 1118 (1979) (measure of damages for violation of restrictive covenant is difference between value of dominant land with nonconforming *948 structure on servient land and value of dominant land with conforming structure on servient land).[6]
One other consideration influences our analysis. At the core of the policy underlying indebitatus assumpsit is the concept of restitution  a remedy that restores to the plaintiff what is rightfully the plaintiff's. The Supreme Court has held that the remedy of restitution contemplates the restoration of money, or, where no money has actually passed, the restitution of something that can be presumptively converted into money before the action is filed. Powell v. Sheets, 196 Or. 682, 699, 251 P.2d 108 (1952); see also Fleming v. Wineberg, 253 Or. 472, 482, 455 P.2d 600 (1969) ("Restitution is said to be applicable in any situation in which one person is accountable to another on the ground that otherwise one would unjustly benefit or the other would unjustly suffer loss."). Restitution is the value of the benefit that the defendant received, (i.e., the amount by which the defendant was unjustly enriched). Restatement of Restitution ch. 7 Introductory Note 524-25 (1937). A claim for "money had and received," actionable in assumpsit, illustrates the point because under such a claim a plaintiff receives restitution for what was previously rightly the plaintiff's. Here plaintiff however does not seek restitution of money or restitution of something that can be presumptively converted into money before the action was filed. Rather, it seeks to recover through its complaint the value of the benefit that plaintiff could "have received for the release of its building restriction." Although, in a sense, that measure appears to assess the amount that defendants have been unjustly enriched, it fails to engage with the concept that assumpsit is a remedy to recover on what the law implies is a contract to make restitution for something tangible that belonged to the plaintiff and was appropriated by defendants.
We conclude for the above reasons that the trial court erred in denying defendants' motion for judgment on the pleadings on the ground that plaintiff's claim did not lie in assumpsit. Based on our holding, we need not address defendants' other assignments of error on appeal or the assignments of error on plaintiff's cross-appeal.
Reversed on appeal; cross-appeal dismissed as moot.
NOTES
[1] All defendants appeal from the judgment. However, only defendants MBK Northwest (MBK) and Jantzen Dynamic Corporation (Jantzen Dynamic) were subject to the assumpsit claim.
[2] In its second amended complaint, plaintiff initially alleged a right to Circuit City's lease payments, alleging that those payments represented the benefit of defendants' violation of the declaration. The trial court ordered those allegations stricken from the record but allowed plaintiff to pursue the damages for the "commercial value [p]laintiff could and should have received for the release of its building restriction from a commercial developer desiring to build on the [burdened parcel]."
[3] Defendants also argued that, because plaintiff has been able to lease its building for more money as a result of defendants' redevelopment of the area adjacent to plaintiff's property, there has been no diminution in value to plaintiff's property as a result of the violation. We do not address that argument because those facts are not in the pleadings and are therefore not relevant to whether defendants are entitled to judgment on the pleadings. See Slogowski, 324 Or. at 439, 927 P.2d 587.
[4] "Thoughts much too deep for tears subdue the court when I assumpit bring, and godlike waive a tort." John Leycester Adolphus, The Circuiteers, 1821, reprinted in 1 Law Quarter Rev. 232 (1885).
[5] For instance, in Raven Red Ash Coal Co. v. Ball, 185 Va. 534, 543, 39 S.E.2d 231 (1946), the court explained:

"The general rule stated in the majority of cases we have found is that, in an action for use and occupation, or for damages to realty, based on assumpsit, the plaintiff must prove that the defendant occupied the premises with his permission, either express or implied, or that the trespasser obtained something from the soil, such as growing crops, timber or ore, and appropriated the same to his own use. If the trespasser simply used the property of another to save himself inconvenience or even expenditure of money, the owner cannot maintain an action of debt or assumpsit."
[6] Although plaintiff's underlying tort claim pertained to the violation of the restrictive covenant, it is important to understand that the violation of that covenant is not the thing that plaintiff alleges was taken by defendants. In fact, defendants could not have received, acquired, or benefitted from the view easement. What they received, acquired, or benefitted from was the release of the view easement.