Argued and submitted March 5, 2008, at the University of Oregon School of Law, Eugene, Oregon, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings June 11, 2009

## COMCAST OF OREGON II, INC.,
*Respondent on Review,*

*v.*

## CITY OF EUGENE,
an Oregon municipal corporation,
*Petitioner on Review.*

(CC 16-03-07308; CA A126445; SC S054884)

209 P3d 800

Jerome Lidz, of Harrang Long Gary Rudnick PC, Eugene, argued the cause and filed the brief for petitioner on review. With him on the brief were William F. Gary, Sharon A. Rudnick, and C. Robert Steringer.

Duane A. Bosworth, of Davis Wright Tremaine LLP, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Kevin H. Kono.

Candace A. Haines, McMinnville, filed the brief for *amicus curiae* League of Oregon Cities.

Mark S. Rauch, Salem, filed the brief for *amicus curiae* City County Insurance Services Trust.

DURHAM, J.

## DURHAM, J.

In this action, Comcast of Oregon II, Inc. (Comcast) challenges the validity of two administrative orders that the city manager of the City of Eugene (city) adopted. The trial court granted summary judgment for the city. On appeal, the Court of Appeals reversed and remanded. *Comcast of Oregon II, Inc. v. City of Eugene*, 211 Or App 573, 155 P3d 99 (2007). The Court of Appeals determined, among other things, that ORS 30.275, which we quote below, did not obligate Comcast to give a timely notice of its claims to the city before filing this action. This court granted review to address that question. Although we rely on different reasoning, we affirm the Court of Appeals.

The facts are largely undisputed. The city regulates "work affecting a public way" by, among other things, requiring parties doing such work to obtain a permit. *See* Eugene Code (EC) § 7.290(2) (so providing). The city charges a fee for a permit.[1] Two provisions of the Eugene Code address how the city sets the fees. First, EC § 7.300 provides, in part:

"(1)   The fee for a permit required by section 7.290 shall be set by the city manager pursuant to section 2.020 of this code in an amount sufficient to fully recover all of the [c]ity's costs related to processing the application for the permit and inspecting the work during and after completion of the work."

The second provision, incorporated in EC § 7.300 by reference is EC § 2.020 (1999),[2] which provided, in part:

"(2)   In determining the amount of any such fee the city manager shall consider:

"* * * * *

"(d)   The amounts charged by other comparable providers * * *[.]"

---

[1] The fee charged is designed to reimburse the city for its expenses in reviewing construction plans and inspecting the work performed on public streets and sidewalks by the permit holder.

[2] Unless otherwise noted, all references to EC § 2.020 are to the 1999 version of that section, which was in force at all times relevant to this case. Section 2.020 was amended in 2007, but those amendments are not relevant to the disposition of this case.

Before January 2002, the city charged permit fees for utility work that affected a public way (such as street paving) on a per-foot basis for the first 1,000 feet; the city charged no additional fee for a project extending beyond that length. As a result, the fee charged for a utility permit for a 10,000-foot project was the same as the fee charged for a 1,000-foot project.

Comcast has a franchise from the city to provide cable services. In late June 2001, Comcast entered into a written agreement with the city to upgrade Comcast's cable facilities by June 30, 2003. The city required Comcast to obtain a permit to perform the upgrade work. The majority of the upgrade work involved aerial installations (as opposed to underground installations). The agreement provided that, if Comcast did not complete the upgrade on time, Comcast was liable for a $25,000 financial penalty and, potentially, termination of its franchise.

In fall 2001, the city staff determined that the existing permit fees were not high enough to recover the city's costs. They developed a new fee schedule, which (among other things) removed the 1,000-foot project cap on permit fees. In developing the new fee schedule, the city staff did not obtain information about the amounts charged for permit fees for utility work by other jurisdictions, as required by EC § 2.020(2)(d). The staff concluded that, because EC § 7.300(1) required the permit fees to compensate the city for its costs, the amounts charged by other jurisdictions were irrelevant. After a period for public comment, the city manager adopted the new fee schedule effective on January 30, 2002, as Administrative Order No. 58-01-18-F (2002 order).[3]

The 2002 order significantly increased the fees that Comcast would have to pay for the permits that it needed for its upgrade project. Comcast previously had estimated the total permit fees for the upgrade to be about $15,000. Comcast estimated its fees under the 2002 order to be

---

[3] Comcast has contended that it had no notice that the 2002 order would apply to aerial installations, because the city had not previously required permits for aerial installations. The city has disputed that, arguing that it had required permits for aerial installations in the past, including aerial installations by Comcast and its predecessors. We need not resolve that issue here.

approximately $360,000. In June 2002, Comcast protested the increased fees, asserting, among other things, that charging permit fees for aerial installations violated EC § 7.300.

In response to complaints, the city prepared an amended fee schedule for permits, for which it gave public notice in October 2002. Comcast provided written comments criticizing the proposed amendments to the fee schedule. The city manager adopted the amended fee schedule as Administrative Order No. 58-02-29-F (2003 order), effective February 18, 2003. The 2003 order applied only to installations that were primarily aerial installations. It provided that the city would charge a permit fee for the first five miles of a primarily aerial installation at the rates set by the 2002 order, but would reduce the rate charged per foot for distances beyond five miles. Under protest, Comcast paid the permit fees under the 2002 and 2003 orders, totaling approximately $375,000.[4]

In April 2003, Comcast filed this action against the city in circuit court. The complaint identified three separate claims: a petition for writ of review, a claim for declaratory judgment, and a claim for money had and received. The trial court later dismissed the petition for writ of review, and the parties present no issues to this court regarding that dismissal. The claim for declaratory judgment sought a declaration that the city adopted the 2002 and 2003 orders in violation of EC § 7.300(1). In the claim for money had and received, Comcast contended that the city had collected fees in excess of those permitted by EC § 7.300(1) and that Comcast was entitled to a refund of those excessive fees.

Both the city and Comcast moved for summary judgment. For its part, the city contended (among other things) that the declaratory judgment action qualified as a tort claim under the Oregon Tort Claims Act (OTCA), ORS 30.260 to

---

[4] The record is not consistent as to the amount that Comcast paid. In its motion for summary judgment, Comcast calculates the total amount actually paid as $331,105.10. The motion cites exhibits attached to the declaration of Sanford Inouye. Those exhibits, however, are not contained in the record submitted to this court. Furthermore, the declaration of Inouye states that Comcast paid the city "approximately $375,000 in permit fees associated with [Comcast's] upgrade activities in 2002 and 2003." For purposes of this opinion, we need not resolve that discrepancy.

30.300, and that Comcast had failed to prove that it had given the notice required by ORS 30.275(2)(b).[5] The city did not assert that argument against Comcast's claim for money had and received, however. Instead, the city argued that Comcast could not recover under the "money had and received" claim because Comcast had paid the permit fees voluntarily. Finally, the city contended that it validly had adopted the disputed orders.

Comcast argued that it was entitled to summary judgment on its declaratory judgment action because the city had adopted the 2002 and 2003 orders in violation of EC § 7.300 and the section that it incorporated, EC § 2.020. Among other things, Comcast argued that the city's failure to obtain information about the fees charged for comparable permits in other jurisdictions meant that the city had adopted both orders in violation of EC § 2.020(2)(d). As for its claim for money had and received, Comcast argued that its payments to the city were not voluntary—that they had been made under duress and under protest because of the potential penalties that Comcast would have faced unless it finished the upgrade by the June 30, 2003, deadline.

In a letter to the parties, the trial court announced that it would grant summary judgment for the city; however, in so ruling, the court identified only those arguments by the city that the court had found unpersuasive:

"The Court has decided to grant the City's Motion for Summary Judgment. That is based upon reasons other than the claim that Comcast was not under duress in the payment of fees. The Court finds that the circumstances did

---

[5] ORS 30.275 provides, in part:

"(1) No action arising from any act or omission of a public body * * * within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section."

ORS 30.275(2)(b) requires that notice of a claim be given "within 180 days after the alleged loss or injury."

The city argues that Comcast's failure to serve a tort claim notice constitutes a jurisdictional flaw that deprives this court of authority to proceed. We disagree. As we explain in this opinion, the tort claim notice requirement in ORS 30.275(1) does not apply to Comcast's claims, and, therefore, the city's argument raises no defect in this court's jurisdiction. That answer obviates the need to examine in this case whether the notice requirement is not only a procedural component but also a jurisdictional prerequisite.

amount to duress and that [Comcast] would have been entitled to recover monies paid had it otherwise prevailed. In addition, the Court does not find sustainable the Defendant City's claim that [Comcast] failed to abide by the Oregon Tort Claims Act."

The trial court subsequently entered a general judgment for the city.

Comcast appealed to the Court of Appeals, contending that the trial court erred in granting summary judgment for the city. In response, the city contended that both the claims for declaratory judgment and for money had and received were barred by the OTCA because Comcast had failed to prove that it had given the required OTCA notice. As to Comcast's claim for money had and received, the city also contended that Comcast's payments had not been made under duress, but had been voluntary.

The Court of Appeals reversed and remanded the decision of the trial court. First, the court rejected the city's arguments that the OTCA barred the claims for declaratory judgment and for money had and received. *Comcast*, 211 Or App at 580-82. Second, the court concluded that the 2002 and 2003 orders had not been validly enacted because the city had violated EC § 2.020 by failing to consider the amounts charged for similar permits in other jurisdictions. *Id.* at 582-85. For that reason, the Court of Appeals concluded that the trial court should have granted summary judgment for Comcast on its declaratory judgment claim. *Id.* at 585. Third, the court concluded that disputed issues of fact existed regarding Comcast's claim for money had and received—specifically, whether the payments had been made under duress—and, thus, the trial court had erred in granting summary judgment for the city. *Id.* at 587-89.

The city petitioned this court for review, but it presents only a narrow range of issues. The city does not challenge the Court of Appeals' holding that the 2002 and 2003 orders were adopted in violation of EC § 2.020 or its conclusion that disputed issues of fact existed regarding duress as to the claim for money had and received. We therefore do not revisit or discuss those issues further. The only issue presented by the city on review is whether the OTCA barred the

claims for declaratory judgment and for money had and received. In fact, the issue actually presented is narrower still. Because Comcast filed this action within 180 days of the adoption of the 2003 order, the city's arguments focus only on the question whether the OTCA required Comcast to give a notice of claim regarding its challenge to the 2002 order.

Before the Court of Appeals, the city argued that Comcast's declaratory judgment and money had and received claims constituted claims of "tort," as that term is defined in the OTCA, ORS 30.260(8).[6] Addressing the declaratory judgment claim first, the Court of Appeals found it unnecessary to address the statutory definition of tort at all and concluded instead that a declaratory judgment claim is not subject to the OTCA. The court stated:

> "We need not decide whether plaintiff's declaratory judgment claim alleges a tort as that term is defined in ORS 30.260(8). Even if it does, it is not a claim for which notice must be given under ORS 30.275. As the Supreme Court explained in *Krieger v. Just*, 319 Or 328, 337, 876 P2d 754 (1994), notice under ORS 30.275 is required only for claims 'made possible and authorized by' the OTCA, not for previously existing claims—that is, notice is required only for claims that were previously barred by sovereign immunity. *See Jensen v. Whitlow*, 334 Or 412, 416, 51 P3d 599 (2002) ('In 1967, the legislature passed the Oregon Tort Claims Act (OTCA), which abrogated, in part, the state's sovereign immunity.')."

*Id.* at 581. Because sovereign immunity had not barred declaratory judgment claims alleging the invalidity of governmental enactments, the court concluded, ORS 30.275 did not require Comcast to give notice of its declaratory judgment claim. *Id.*

---

[6] ORS 30.260 provides, in part:

"As used in ORS 30.260 to 30.300, unless the context requires otherwise:

"* * * * *

"(8) 'Tort' means the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy."

■      The city contends that the Court of Appeals misread *Krieger* and that the notice provision of ORS 30.275 does not apply to only claims barred by common-law sovereign immunity. We agree with the city, as we will explain below.

Cities in Oregon never have enjoyed a complete immunity equal to the state's sovereign immunity. Since its enactment in 1967, the OTCA has applied to some claims against public bodies that were not barred by sovereign immunity. At common law, sovereign immunity applied to municipal corporations, such as the city, only when they were engaged in "governmental functions"; municipal corporations had no sovereign immunity as to "proprietary functions." *Hale v. Port of Portland*, 308 Or 508, 518-19, 783 P2d 506 (1990) (noting that maintenance of roads and streets had been considered to be proprietary activity, while operation of a city park had been considered to be governmental). With the enactment of the OTCA, the legislature effectively abolished the "governmental/proprietary" function distinction, making both types of claims subject to the limitations contained within the OTCA. *See* Or Laws 1967, ch 627, § 2 ("Subject to the limitations of this Act, every public body is liable for its torts * * * whether arising out of a governmental or proprietary function."), *codified as since amended at* ORS 30.265(1) ("Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts * * * whether arising out of a governmental or proprietary function * * *."); *Hale*, 308 Or at 523 (OTCA "widened" class of plaintiffs "by removing the requirement that an injured party show that the municipal corporation's activity that led to the injury was a proprietary one"). In short, the text of ORS 30.265(1) makes the provisions of the OTCA applicable to some claims that were not barred by common-law sovereign immunity.

■      Furthermore, the text of the OTCA notice statute, ORS 30.275, confirms that notice is required for all claims that are subject to the OTCA. The notice provision, ORS 30.275, provides, in part:

"(1)   No action arising from any act or omission of a public body or an officer, employee or agent of a public body

within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section."

ORS 30.275(1). On its face, the statutory text "within the scope of ORS 30.260 to 30.300" refers to all OTCA tort claims. As we have noted, the OTCA applies to some claims that were not barred by common-law sovereign immunity. The Court of Appeals concluded, however, that this court in *Krieger* had interpreted ORS 30.275(1) differently. We turn to an examination of that case.

In *Krieger*, the plaintiff had filed an action against an individual defendant for injuries sustained in an auto accident in 1988. The defendant contended that, at the time of the accident, she had been a public employee driving for a purpose related to her public employment. Consequently, the defendant claimed, the action against her was subject to the limitations of the OTCA, as they existed in 1988.[7] The issue before this court was whether the notice provision of the OTCA, ORS 30.275(1), applied to the action against the defendant. Specifically, the court in *Krieger* considered whether the statutory phrasing, "within the scope of ORS 30.260 to 30.300," included actions against individual defendants that the plaintiff might have chosen to file against a public body under *respondeat superior*.

As the Court of Appeals noted, the court in *Krieger* equated the statutory phrase, "within the scope of ORS 30.260 to 30.300," with "[claims] made possible and authorized by the Oregon Tort Claims Act." 319 Or at 337.[8] But, in

---

[7] Since 1988, the legislature has amended the OTCA to make its provisions applicable to actions against individual public employees. *See, e.g.*, Or Laws 1991, ch 861, § 1 (amending ORS 30.265 to require that torts committed by public employees in the course of their employment must be pursued by actions against a public body and prohibiting actions against such public employees individually).

[8] In context, this court stated:

"The phrase 'within the scope of ORS 30.260 to 30.300 [the Oregon Tort Claims Act],' found in the 1981 amendments (and comprising the 1987 version that applies to this 1988 claim), is the same phrase that appeared in the 1973 and 1975 versions of the Oregon Tort Claims Act. In those earlier versions, the phrase clearly modified or explained the kind of 'claim' for 'damages' to which it applied. That kind of claim, which the phrase modified or explained, was one *made possible and authorized by the Oregon Tort Claims Act*, not a previously existing common-law negligence claim against an individual."

319 Or at 337 (alteration in original; emphasis added).

the very next paragraph, the opinion in *Krieger* rephrased that conclusion; the court equated the statutory phrase with "claims that are within the Oregon Tort Claims Act." *Id.*[9] When this court referred to claims "made possible and authorized by" the OTCA, it merely described generally what the OTCA had done, which was to expose public bodies to claims in tort that otherwise would have been barred by sovereign immunity.

In *Krieger*, this court concluded that the phrase "within the scope of ORS 30.260 to 30.300" embraced all tort actions against a public body. That phrase did not embrace, in 1988, tort claims against individual public employees, even if the plaintiff could have brought an action against the public body under a theory of *respondeat superior*.

■ We therefore conclude that the Court of Appeals misread *Krieger* when it concluded that the notice provisions of the OTCA applied to only those OTCA claims that would have been barred by sovereign immunity at common law. By its terms, the OTCA expressly applies to claims in "tort," ORS 30.260(8), including claims that were not subject to common-law sovereign immunity, and *Krieger* did not hold to the contrary.[10]

That conclusion, however, does not determine whether the claims at issue in this case are "tort" claims within the scope of the OTCA. The city contends that they are. We consider each claim separately.

---

[9] In that next paragraph, this court stated:

"When the 1981 legislative session enacted a new first sentence to ORS 30.275(1), the legislature retained the modifying phrase 'within the scope of ORS 30.260 to 30.300 [the Oregon Tort Claims Act].' *Indeed, that phrase has been used consistently in all versions of ORS 30.275(1), from before 1973 up to the present, to the same effect: as a limitation on the application of the notice provisions of ORS 30.275 to claims that are within the Oregon Tort Claims Act.* Therefore, the sentence requiring notice for such claims does not, by its terms, cover the circumstances in this case, because this case does not purport to be *either* an action against a public body *or* an action against an employee of a public body, *qua* employee."

319 Or at 337 (alteration in original; first emphasis added; other emphases in original).

[10] In this case, plaintiff does not raise constitutional objections to the applicability of the OTCA to its claims.

█    The OTCA defines "tort" as follows:

" 'Tort' means the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy."

ORS 30.260(8). The city argues that Comcast's declaratory judgment claim alleged a "tort" claim because it asserted a breach of a legal duty (the adoption of the 2002 and 2003 orders in violation of EC §§ 7.300 and 2.020); it alleged that Comcast suffered a resulting injury (payment of excessive permit fees); and Comcast sought a protective remedy (a declaratory judgment).

We reject the city's argument. The city was engaged in a species of lawmaking when it adopted the 2002 order. The lawmaking process for a public body is itself governed by a body of laws. For example, a public body, acting pursuant to delegated authority, might adopt procedural rules, substantive standards, or other requirements that control the procedural or substantive components of its own lawmaking; it is bound by those provisions while they are in effect. The public body also is bound to observe any applicable procedural or substantive statutory requirements that govern its lawmaking authority. Finally, the public body must observe applicable limits on its authority that derive from procedural or substantive requirements expressed in the state and federal constitutions.

A violation of any of those lawmaking requirements can lead to a legal challenge in court asserting that the adopted law is invalid in whole or in part. In that context, the court's inquiry focuses on whether the public body, during the lawmaking process, complied with pertinent procedural and substantive requirements for lawmaking, including any limitations on its legal authority to enact the law in question. *See Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 564-65, 687 P2d 785 (1984) (discussing "proper sequence of analyzing the legality of action taken by officials under delegated authority" and concluding that challenged agency rule "is invalid because it exceeds the statutory authority of the agency").

We may conceive of a court's consideration of such a legal challenge to public body lawmaking as a determination whether the public body breached a legal duty imposed by law, within the meaning of ORS 30.260(8). And, at least where a public body's lawmaking has resulted "in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy," ORS 30.260(8), the act of lawmaking may be a component of a tort claim.

■        However, a public body's act of adopting a law or rule in violation of an applicable procedural or substantive requirement is not a tort under ORS 30.260(8). The city fails to distinguish between the enactment and the enforcement of an unauthorized law or rule. The latter may be a tort. The former is not, because the law provides no damages remedy, or other protective remedy, for a public body's act of adopting a law or rule allegedly in violation of an applicable procedural or substantive requirement.

■        A declaratory judgment action is a particularized legal device that enables the courts to answer legal questions about the validity, among other things, of public body law-making. *See* ORS 28.010 (declaratory judgment is "power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed").[11] That is the kind of judgment that Comcast sought here. In its complaint, Comcast sought a determination that the 2002 and 2003 orders were adopted in violation of the provisions of the Eugene Code. In asking the court to determine whether the city validly adopted the 2002 and 2003 orders, Comcast did not claim that the city was liable for a tort.

---

[11] When Comcast filed its complaint in 2003, ORS 28.010 (2001) provided:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree."

That statute since has been amended, but in only a technical way. *See* Or Laws 2003, ch 576, § 302 (changing "declaratory judgment or decree" to "declaratory judgment" and changing "final judgment or decree" to "judgment").

■■ A declaratory judgment may include a grant of further relief by the trial court. *See* ORS 28.080 (setting out procedure to obtain further relief, when "necessary or proper"; party must file petition, and adverse party must be given reasonable notice).[12] Comcast argues that it did not request further relief for any injury; its claim was, instead, a challenge to the validity of the city's order. The principal question under ORS 30.260(8), however, is whether the law provides a civil right of action for a protective remedy for the claim stated. A plaintiff's decision, when pleading a declaratory relief claim, to request or refrain from requesting further relief does not determine the answer to that issue. Properly viewed, the court's authority under ORS 28.080 to grant further relief is an adjunct to the court's statutory authority to grant a declaratory judgment. The possibility that the court might exercise that authority does not transform Comcast's challenge to the city's orders into a "tort" claim.

In summary, we conclude that, in regard to the declaratory judgment claim, the Court of Appeals reached the right result, although we rely on a different reason. The court erred when it concluded that the notice provisions of the OTCA apply to only claims that would have been barred by common-law sovereign immunity. Comcast's action for declaratory judgment does not assert the city's liability for a "tort," as defined in ORS 30.260(8).[13] The city is not entitled to summary judgment on that claim.

---

[12] When Comcast filed its complaint in 2003, ORS 28.080 (2001) provided:

"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application thereof shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

Like ORS 28.010, that statute since has been amended, but in only a technical way. *See* Or Laws 2003, ch 576, § 306 (changing "declaratory judgment or decree" to "declaratory judgment" in two places).

[13] Our conclusion answers the question presented by this case, but it may not exhaust the interpretive possibilities regarding the applicability of ORS 30.260(8) to declaratory judgment proceedings under ORS 28.010 to 28.160. For example, we leave for another day the question whether the legislature, in granting authority to the courts in ORS 28.010 to "declare rights, status, and other legal relations, whether or not further relief is or could be claimed[,]" has "provide[d] a civil right of action for damages or for a protective remedy[ ]" under ORS 30.260(8).

■       The city also contends that Comcast's third cause of action, for money had and received, constitutes a tort under ORS 30.260(8). The city does not dispute that the statutory definition of tort specifically excludes those breaches of legal duty that are quasi-contractual. *See* ORS 30.260(8) (" 'Tort' means the breach of a legal duty that is imposed by law, *other than a duty arising from contract or quasi-contract * * *.*" (Emphasis added.)). The city also does not dispute that a claim for money had and received is an action in quasi-contract. *See Davis v. Tyee Industries, Inc.*, 295 Or 467, 469-70, 668 P2d 1186 (1983) (noting that claim for money had and received was one specific form of general assumpsit, also known as quasi-contract); *Powell et al. v. Sheets et al.*, 196 Or 682, 699-700, 251 P2d 108 (1952) (claim for money had and received is form of assumpsit; "[r]ecovery * * * is based on a promise implied by law or quasi[-] contract") (internal quotation marks omitted). Instead, the city argues that Comcast's claim is, at its core, a tort, not a claim in quasi-contract.

The city relies on this court's decision in *Davis*, 295 Or 467. In *Davis*, this court described how an action for money had and received—one form of general assumpsit—had begun as a promise implied by law to prevent unjust enrichment. 295 Or at 469-70. Over time, however, the courts also allowed that action in tort cases. *Id.* at 470. In that context, a plaintiff was said to have waived the tort and sued in assumpsit. *Id.* Often, plaintiffs did so in an attempt to obtain advantages that were not available for the tort claim itself, such as a longer statute of limitations or a more favorable burden of proof. *Id.* at 471. The court concluded, however, that "[p]leading a claim in assumpsit does not transform a tort into a contract." *Id.* In support, the court quoted extensively from one commentator, who argued:

> " 'In all cases where a tort is waived, there is in fact no contract. The cause of action is a tort, and the tort exists as the cause of action and must be proved as the cause of action from first to last. * * * [I]n the cases here considered there is a recognized tort, it is the real cause of action, and the tort limitation should control.' "

*Id.* at 471 (quoting Corbin, *Waiver in Tort and Suit in Assumpsit*, 19 Yale LJ 221, 235-36 (1910)).

The city contends that Comcast's claim for money had and received is, in substance, a tort claim. Therefore, the city argues, we should characterize Comcast's claim as a tort under the OTCA and disregard the fact that Comcast's claim is a quasi-contractual action for money had and received.

We are not persuaded by the city's argument. This court's task in this context is to determine the intention of the legislature when it excluded legally imposed duties "arising from * * * quasi-contract" from the definition of "tort" in ORS 30.260(8).

In adopting the OTCA in 1967, the legislature incorporated no special definition of the term "tort." That approach left to the courts the task of interpreting the term "tort" for purposes of the OTCA. In 1976, this court addressed the meaning of the term "tort" under the OTCA in *Urban Renewal Agency v. Lackey*, 275 Or 35, 549 P2d 657 (1976), which involved the question whether a governmental entity had committed a "tort" by breaching a purely statutory duty. This court stated that "any breach of a legal duty resulting in damages, other than those duties created by contract, is a tort, whether that duty is imposed by the common law or by statute." *Id.* at 38. That statement did not mention legal duties arising from quasi-contract.

In 1985, the legislature adopted the current statutory definition of "tort," including the express exclusion of legal duties arising from quasi-contract. Or Laws 1985, ch 731, § 31.[14] By that time, this court long had recognized that an action for money had and received is designed to prevent unjust enrichment through enforcement of a legally imposed duty arising in quasi-contract. In *Smith v. Rubel*, 140 Or 422, 426-27, 13 P2d 1078 (1932), this court stated:

> "An action for money had and received, although an action at law, is governed by equitable principles. * * * The action is liberal in form, and greatly favored by the courts. * * * The generally accepted test which determines whether a recovery may be had is whether the defendant, in equity

---

[14] The legislature in 1985 adopted the definition of "tort" as a part of ORS 30.265(1). In 1987, the legislature deleted the statutory definition of "tort" from ORS 30.265(1), and moved the definition without modification to the OTCA's list of specially defined terms in ORS 30.260. Or Laws 1987, ch 705, §§ 6, 7.

and good conscience, is entitled to retain the money to which the plaintiff asserts claim. * * * The right to the refund is based upon a promise to return which the law implies, irrespective of any actual promise, and even against the refusal of the wrongful party to make it."

In *Powell*, this court stated:

"In 58 CJS, Money Received, 906, § 1, it is stated:

" 'The term "money had and received" is the technical designation of a form of declaration in assumpsit, wherein plaintiff declares that defendant had and received certain money, etc. Although an action at law, an action for money had and received is equitable in its nature and is governed by equitable principles. It may, in general, be maintained whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other. *Recovery in such case is based on a promise implied by law or quasi contract and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution.' "

196 Or at 700 (emphasis in *Powell*).

■ Those decisions indicate that, by 1985, Oregon law was settled that an action for money had and received was a claim based on a promise of restitution implied by law or quasi-contract. In construing the legislature's intent in excluding legal duties arising in quasi-contract from the scope of the definition of "tort," we must be mindful of that settled law as part of our analysis of statutory context. *Owens v. Maass*, 323 Or 430, 438, 918 P2d 808 (1996). As this court stated in *Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007), "[W]e generally presume that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing on those statutes."

When we apply those interpretive principles here, it is clear that the legislature in 1985 used the term "quasi-contract" to describe claims, including claims for money had and received, that are grounded on the equitable principle that one who has been unjustly enriched at the expense of another must make restitution. The effect of the 1985 amendment to the statutory definition of "tort," ORS 30.260(8), is to

permit quasi-contractual claims, such as Comcast's, to proceed against a public body without the need to comply with statutory notice requirements that apply to conventional tort claims.

*Davis*, 295 Or 467, is of no assistance to the city. *Davis* recognized that a claim for money had and received may assert that the plaintiff's right to recover money wrongfully obtained or withheld arises from alleged tortious conduct. According to the *Davis* court, a plaintiff may recover tort damages, including punitive damages, in the context of an action for money had and received, but only if the pleadings and proof are sufficient to support a recovery of those remedies. The court in *Davis* noted that an earlier case, *Adams v. Crater Well Drilling, Inc.*, 276 Or 789, 556 P2d 679 (1976), had sustained a claim for damages for tortious conduct in an action for money had and received. *Davis*, 295 Or at 474-75. The *Davis* court held that the allegations before it were insufficient to sustain an award of punitive damages, but that the defendant had failed to object to either the pleadings or the sufficiency of the evidence. Consequently, the court affirmed the award of punitive damages. *Id.* at 484.

■ *Davis* confirms that, with proper pleading and proof, a plaintiff may recover certain tort remedies in an action for money had and received. Those additional remedies are not at issue here. The holding in *Davis* is consistent with our conclusion, discussed above, that an action for money had and received, such as Comcast's action, is a claim based on quasi-contract. *Davis* said nothing to change the availability of that claim:

> "We emphasize that the holding of this case in no way limits the remedies which this court has repeatedly recognized, remedies often referred to as constructive trust, restitution, *quasi contract* or unjust enrichment."

*Id.* at 479 n 9 (emphasis added).

■ The statutory definition of "tort" in ORS 30.260(8) indicates that the OTCA does not apply to an action in quasi-contract. If a plaintiff pleads a claim in quasi-contract, we must give effect to the legislature's exclusion of quasi-contract from the definition of tort. An action for money had

and received asserting a theory of quasi-contract to avoid unjust enrichment is not a "tort" under ORS 30.260(8).

Based on the foregoing, we conclude that the Court of Appeals reached the correct result in this case. Neither Comcast's declaratory judgment claim nor its claim for money had and received are tort claims under ORS 30.260(8). Consequently, those claims are not governed by the notice requirements of the OTCA.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.