Argued and submitted on August 26, 2016; supplemental judgment reversed and remanded, otherwise affirmed June 14; petition for review denied November 9, 2017 (362 Or 175)

Justin CURZI,
on behalf of himself and all other
similarly situated individuals,
*Plaintiff-Appellant,*

*v.*

OREGON STATE LOTTERY;
IGT (INC.); GTECH Canada, ULC;
and WMS Gaming, Inc.,
*Defendants-Respondents.*

Multnomah County Circuit Court
14CV20598; A159674

398 P3d 977

Jay Zollinger argued the cause for appellant. With him on the briefs were Outside General Counsel Services, P.C., Helen C. Tompkins, and Tompkins Law Office, LLC.

Keith L. Kutler, Assistant Attorney General, argued the cause for respondent Oregon State Lottery. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Thomas W. Sondag argued the cause for respondents IGT (Inc.) and GTECH Canada, ULC. With him on the brief was Lane Powell PC.

Brad S. Daniels, Timothy W. Snider, and Stoel Rives LLP filed the brief for respondent WMS Gaming, Inc.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

## SHORR, J.

Plaintiff Justin Curzi appeals from a judgment dismissing his claims with prejudice and a supplemental judgment awarding certain defendants their prevailing party fees. Plaintiff played state-sanctioned video poker machines offered by defendant Oregon State Lottery (the Lottery). Plaintiff brought claims against both the Lottery and several defendants who manufacture video poker machines for the Lottery (collectively, the manufacturers).[1] On appeal, plaintiff raises two assignments of error. Plaintiff first assigns error to the trial court's dismissal of his claims with prejudice. Plaintiff argues that the trial court erred when it dismissed plaintiff's tort claims after it concluded that plaintiff failed to provide timely notice of his claims within the 180-day tort-claim notice period required by the Oregon Tort Claims Act (OTCA), ORS 30.275(2)(b). Plaintiff also argues that the trial court erred when it dismissed his unjust enrichment claim based on its conclusion that the State of Oregon had not waived sovereign immunity from quasi-contract claims.[2] We conclude that the trial court did not err in granting defendants' motion to dismiss with prejudice on either of those bases.

In plaintiff's second assignment of error, plaintiff contends that the trial court erred in assessing prevailing party fees against him in the supplemental judgment because, under ORS 20.190(6)(a), prevailing party fees may not be assessed in a "class action proceeding under ORCP 32." We agree that the trial court erred in assessing prevailing party fees against plaintiff because, while this case was not "maintained" or certified as a class action proceeding, it was alleged as a class action proceeding under ORCP 32, and a plaintiff who alleges such a proceeding is not subject

---

[1] The manufacturers include defendants IGT (Inc.), GTECH Canada, ULC, and WMS Gaming, Inc.

[2] As part of his first assignment of error, plaintiff also argues that the trial court erred when, in the alternative, the court dismissed, for failure to state a claim, plaintiff's second and third claims in tort against the Lottery and his fifth claim against the manufacturers for "acting in concert" with the Lottery's alleged tortious conduct. Based on our conclusion that the trial court did not err in dismissing plaintiff's tort claims as untimely under the OTCA, we do not reach the trial court's alternative rulings dismissing those claims on the merits.

to prevailing party fees, even if that plaintiff does not ulti-mately prevail. As a result, we affirm the general judgment, but reverse the award of prevailing party fees to the manu-facturers in the supplemental judgment.

We turn to the merits of this appeal. For the purpose of deciding whether a trial court erred in granting an ORCP 21 motion to dismiss, we assume the truth of all well-pleaded facts alleged in the complaint. *Doe v. Lake Oswego School District*, 353 Or 321, 323, 297 P3d 1287 (2013). Further, where the parties have "quoted from, cited, attached, and incorporated by reference a number of documents" outside of the pleadings, we can "consider [those] 'matters outside the pleading[s], including affidavits, declarations and other evidence presented to the court.'" *Martin v. Lane County*, 281 Or App 285, 286-87, 383 P3d 903 (2016) (quoting ORCP 21 A(1)). However, we "must use care to insure that [our] determination of the facts on a motion to dismiss does not interfere with a party's right to a trial on disputed questions of material fact." *Black v. Arizala*, 337 Or 250, 265, 95 P3d 1109 (2004).

Thus, we assume the truth of the allegations in the complaint and may rely on the *undisputed* facts that the parties presented to the trial court in documents that supplemented their pleadings. Here, the parties presented a number of documents to the trial court to supplement their pleadings. The parties did not dispute the facts in those doc-uments, although the parties argue that there are different conclusions to be drawn from those facts, which we address below. Further, the parties relied on those documents in the trial court to make their arguments, and continue to do so before us.

Turning to those facts, the Lottery owns and oper-ates video poker machines made by the manufacturers. Those video poker machines have an auto-hold feature that recommends to players at certain points during their games which cards players should discard or keep. Players have the option of overriding the auto-hold feature at any time; however, players must actively elect not to rely upon the auto-hold feature in order to avoid following its recom-mended strategies. The auto-hold feature does not always

recommend the best possible playing strategy, and, at times, a player's odds of winning would increase were that player to disregard the auto-hold recommendation. The auto-hold strategy is programmed by the manufacturers.

The Lottery advertises the theoretical payouts for each video poker game, but does not disclose the theoretical payouts adjusted for the suboptimal strategies recommended by some auto-hold features. However, on its website, the Lottery does state, "Auto-hold strategies vary by game, based on the particular features of a game and do not necessarily result in theoretical payouts."

In January 2014, plaintiff was playing video poker on one of the machines owned by the Lottery and made by a defendant manufacturer when he noticed that the game's auto-hold feature was recommending a suboptimal strategy based on his particular hand. On January 16, 2014, plaintiff emailed the Lottery requesting more information about the auto-hold feature. In that email, plaintiff stated:

> "By holding the cards you suggested to me, I have a 50% lesser chance of winning. My impression of the rules and regulations surrounding the 'Hold' feature on your machines is that the state of Oregon is being fair and telling me the best possible hand to be played. This does not seem to be the case.

> "I'm concerned not only for this particular hand, but also, for a) the number of times this hand must have been misrepresented in the history of all of your machines and also b) which other hands in these machines are telling the bettor the wrong cards to hold."

The Lottery responded by email on February 3, 2014. In that response, a representative of the Lottery denied any wrongdoing, stating:

> "OAR 177-200-0070 Requirements for Poker Games (3) states:

> "*Any auto hold features that assist players in their decision as to which of the cards to hold and discard for the **chance** to obtain **a** winning combination must be displayed.*

> "The strategy to get to a winning hand is programmed by the terminal manufacturer, not the Oregon Lottery. In your case, the terminal did advise a strategy - granted not the <u>only</u> strategy - for you to have an opportunity to win with the cards you were dealt."

(Emphasis, boldface, and underscoring in original.) On February 20, 2014, in response to the Lottery's email, plaintiff retained an attorney and filed a public records request with the Lottery for, among other things, "[a]ll inquiries, complaints, and other correspondence from consumers regarding the 'auto-hold' feature of any Oregon Lottery video poker terminals," "[d]ocuments sufficient to identify by Court, Case Number, and Case Name, any complaints, administrative claims, or similar proceedings initiated by or against the Oregon Lottery that refer or relate in any way to the 'auto-hold' feature of any Oregon Lottery video poker terminals," and

> "[a]ny documents that refer or relate in any way to the 'auto-hold' feature of any Oregon Lottery video poker terminals including * * * all documents containing information relevant to * * * how many players follow the strategies recommended by the auto-hold feature, and the impact (financial and otherwise) of including the auto-hold feature in video poker games."

Plaintiff received an initial response to his public records request on June 12, 2014, when, plaintiff states, the Lottery disclosed "general information" about one video poker game. On August 8, 2014, plaintiff received more information about the Lottery's posted "payout percentages" in which the Lottery posted the payout odds from different video poker games. Plaintiff learned that the Lottery's posted payout percentages reflected the odds of winning if a player played the *optimal* strategy each time rather than if the player sometimes followed the auto-hold recommendations. Plaintiff claims that, as of August 8, 2014, he learned that the Lottery had

> "actual knowledge, since at least 2009, that the auto-hold strategies were programmed to pay out at 1%-5% less than theoretical payout percentages * * *, that the Lottery knew that class members believed that auto-hold was programmed to recommend ideal playing strategies, and that

the Lottery nevertheless consciously elected not to disclose the true impact of auto-hold or to correct how it works."[3]

Plaintiff eventually sent the Lottery a "Notice of Claim and Demand Pursuant to ORCP 32 H and ORS 30.275" on October 24, 2014, which the Department of Administrative Services received on October 30, 2014. On December 31, 2014, plaintiff filed the present action, asserting causes of action against the Lottery for fraud, misrepresentation, negligence, and unjust enrichment, as well as a cause of action for "action in concert" against the manufacturers.[4] In his complaint, plaintiff also sought certification of his claims as a class action under ORCP 32.

Defendants responded with a number of ORCP 21 motions to dismiss. In the Lottery's motion, it first argued that plaintiff's tort claims were barred by the tort-claim notice provision of the OTCA, ORS 30.275(2)(b), which bars actions against public bodies and their agents unless the plaintiff files a claim "within 180 days after the alleged loss or injury." The Lottery asserted that plaintiff was aware or should have been aware of his claim against the Lottery no later than February 3, 2014, and thus his October 24, 2014, notice of claim was untimely filed. Further, the Lottery argued that, even if plaintiff had timely provided them with notice of his claims, his tort claims should also be dismissed because he failed to state ultimate facts sufficient to state legally cognizable tort claims against the Lottery. Finally, the Lottery argued that plaintiff's fourth claim—unjust enrichment—was barred because the state had not waived its sovereign immunity with respect to quasi-contract claims.

In the manufacturers' motions to dismiss, they adopted the Lottery's arguments that there were no viable tort claims against the Lottery and, therefore, they contended that there could not be a fifth claim for relief against the manufacturers for tortiously "acting in concert" with the

---

[3] We assume those facts under our standard of review; however, nothing in this opinion should be construed as resolving those facts for purposes other than this appeal.

[4] Plaintiff filed an amended complaint on February 18, 2015. The amended complaint replaced GTECH USA, LLC, with GTECH Canada, ULC, as a defendant and added a factual allegation noting when plaintiff filed his notice of claim with the Lottery. No other substantive changes were made.

Lottery. The manufacturers also separately argued that the "action-in-concert" claim should be dismissed because plaintiff failed to allege facts sufficient to show that the manufacturers had actual knowledge of the Lottery's alleged fraud or provided substantial assistance to the Lottery's tortious conduct.

In response, plaintiff argued that the OTCA did not bar his claims for two reasons. First, plaintiff asserted that no class member other than plaintiff was even arguably time barred. Second, plaintiff argued that his claims were not time barred because the Lottery's tort was continuing, and, even if it was not, plaintiff did not discover his claim pursuant to the "discovery rule" until he received the response to his public records request on August 8, 2014. Further, plaintiff argued that: (1) he had properly alleged all the elements of his tort claims; (2) the state had waived sovereign immunity from unjust enrichment claims; and (3) he had alleged actual knowledge and substantial assistance by the manufacturers.

After oral argument, the trial court granted all of defendants' motions to dismiss. First, the trial court dismissed plaintiff's first through fourth claims for lack of subject matter jurisdiction. The trial court concluded that the first through third claims, the tort claims against the Lottery, should be dismissed for lack of subject matter jurisdiction because plaintiff did not timely file his tort-claim notice within 180 days as required under ORS 30.275(2)(b). The trial court also concluded that plaintiff's fourth claim, the unjust enrichment claim against the Lottery, should be dismissed for lack of subject matter jurisdiction because the state had not waived sovereign immunity from such a claim. Second, the trial court dismissed plaintiff's fifth claim against the manufacturers because it concluded that its grant of the Lottery's motion to dismiss plaintiff's tort claims against the Lottery necessarily disposed of plaintiff's claim against the manufacturers for "acting in concert" with the Lottery's alleged torts. As a result, the trial court entered a judgment dismissing all of plaintiff's claims with prejudice.

Following the entry of judgment, the manufacturers sought costs and prevailing party fees against plaintiff.

Plaintiff objected, arguing that, because this case was filed as a class action pursuant to ORCP 32, those defendants were not entitled to prevailing party fees under ORS 20.190(6)(a). The trial court disagreed with plaintiff and awarded all of the manufacturers' costs and prevailing party fees in a supplemental judgment.

As noted, on appeal plaintiff raises two assignments of error. Plaintiff first assigns error to the trial court's grant of defendants' motions to dismiss with prejudice. In his second assignment of error, plaintiff argues that the trial court erred in awarding prevailing party fees to the manufacturers.

We begin, appropriately, with plaintiff's first assignment of error. Plaintiff contends that the trial court erred in concluding as a matter of law that plaintiff failed to provide timely notice of his tort claims as required by ORS 30.275. That statute provides, in relevant part:

"(1)  No action arising from any act or omission of a public body * * * shall be maintained unless notice of claim is given as required by this section.

"(2)  Notice of claim shall be given within the following applicable period of time * * *:

"(a)  For wrongful death, within one year after the alleged loss or injury.

"(b)  For all other claims, within 180 days after the alleged loss or injury."

ORS 30.275(2)(b) provides the relevant 180-day tort-claim-notice period for plaintiff's tort claims.

While ORS 30.275(2)(b) provides that the time for a plaintiff to provide notice begins to accrue upon the "alleged loss or injury," the Supreme Court has held that, in using those terms, the legislature contemplated that the plaintiff needs to have a "reasonable opportunity" to discover the alleged injury before the 180-day period begins to run. *Doe*, 353 Or at 327. "[A]n injury is discovered when a plaintiff knows or should have known of the existence of three elements: (1) harm; (2) causation; and (3) tortious conduct." *Id.* at 328 (internal quotation marks omitted). *"[A]ctual*

discovery or knowledge of [a] claim" is not required. *Johnson v. Mult. Co. Dept. of Community Justice,* 344 Or 111, 118, 178 P3d 210 (2008) (emphasis in original). Instead, the time frame "begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a *substantial possibility* that each of the three elements (harm, causation, and tortious conduct) exists." *Uruo v. Clackamas County,* 166 Or App 133, 143, 997 P2d 269 (2000) (emphasis added; internal quotation marks omitted). In applying that standard, "a court must consider the facts from the perspective of a reasonable person in the circumstances of the plaintiff." *Doe,* 353 Or at 333. "Those circumstances include, but are not limited to, the relationship between the parties and the nature of the harm suffered." *Htaike v. Sein,* 269 Or App 284, 296, 344 P3d 527, *rev den,* 357 Or 595 (2015).

"The question whether and when a plaintiff knew or should have known that his or her injury was caused by a particular defendant's tortious conduct ordinarily is a question of fact for the jury." *Johnson,* 344 Or at 118. However, that issue can be decided as a matter of law if the case "presents no triable issue of fact." *Id.* Therefore, when reviewing a trial court's grant of a motion to dismiss based on a failure to comply with ORS 30.275(2)(b), we ask "[i]f the *only* conclusion a reasonable jury could have reached was that plaintiff should have discovered that" he or she had a potential claim more than 180 days before giving notice under ORS 30.275(2)(b). *T. R. v. Boy Scouts of America,* 344 Or 282, 289, 181 P3d 758, *cert den,* 555 US 825 (2008) (emphasis added).

In this case, the trial court concluded that plaintiff knew or reasonably should have known of a substantial possibility that he had suffered harm caused by the Lottery upon receiving the Lottery's February 3, 2014, email response. Thus, the trial court concluded that plaintiff's October 24, 2014, tort-claim notice was untimely because it was given more than 180 days from the date that plaintiff first possessed actual or putative knowledge of his claim.

As noted above, plaintiff initially complained to the Lottery by email on January 16 that the auto-hold feature

on the video poker game that he had played had given him a "50% lesser chance of winning" and that

> "[plaintiff's] impression of the rules and regulations sur-rounding the 'Hold' feature on your machines is that the state of Oregon is being fair and telling me the best possi-ble hand to be played. This does not seem to be the case."

The state responded with its February 3 email that cited the relevant Oregon Administrative Rule stating that the auto-hold feature assists players with decisions to hold and discard cards for *"the **chance** to obtain **a** winning combi-nation."* (Emphasis, boldface, and underscoring in original.) The state also responded on that date that the computer had advised plaintiff on "a strategy - granted not the only strategy - for [plaintiff] to have an opportunity to win with the cards [that plaintiff was] dealt." (Underscoring in original.)

Applying our case law, the question before us is whether, based on those emails, the *only* conclusion that a reasonable factfinder could reach is that plaintiff, as of February 3, was aware or, acting as a reasonable person, should have been aware of a "substantial possibility" that each of the following three elements of his claims were met: "harm, causation, and tortious conduct." *Uruo*, 166 Or App at 143. As discussed below, the trial court correctly con-cluded that that is the only reasonable conclusion that could be made.

Plaintiff was or reasonably should have been aware that he had been "harmed" by the Lottery's conduct when the Lottery indicated to him on February 3, 2014, that the auto-hold feature was not recommending optimal playing strategies, but only "a strategy" and not the "only strategy" to have an opportunity for a winning hand. In his complaint, plaintiff alleged, among other things, that the Lottery had misled video poker players by manipulating the auto-hold features and failing to inform plaintiff and others that "the strategies recommended by the auto-hold feature have mate-rially lower odds of winning than the ideal playing strategy for each hand." He further alleged that that misrepresenta-tion had caused significant financial damages to plaintiff and others. As of February 3, plaintiff knew or reasonably

should have known that he had been harmed as a result of the alleged tortious conduct of the Lottery. Accordingly, the trial court did not err when it concluded that plaintiff failed to provide the state with timely notice of his tort claim under ORS 30.275(2)(b) or when it consequently dismissed plaintiff's claims for lack of subject matter jurisdiction.

Plaintiff raises a number of additional arguments contesting that conclusion. First, plaintiff argues that no reasonable factfinder could determine that he suffered harm after relying on the Lottery's auto-hold recommendation when playing any single poker hand. Instead, plaintiff contends that the effect of the auto-hold feature's bad and misleading advice could only be determined over many poker hands. Thus, plaintiff concludes that it is only "after thousands or even millions of hands and games of poker are played" by plaintiff and others that "the reduced payout odds realized by relying on the auto-hold feature cause damage to the class." Plaintiff argues that, in that way, the Lottery has engaged in a continuing tort for which a timely OTCA notice need only be made at "any time during the continuance of the conduct or within 180 days after its conclusion," citing *Holdner v. Columbia County*, 51 Or App 605, 613, 627 P2d 4 (1981).

We conclude that the Lottery has not committed a "continuing tort" as that term has been used in our case law, and *Holdner* is distinguishable. In *Holdner*, the plaintiff alleged that the county government had negligently maintained ditches and culverts along a county road and that the effect of that ongoing failure to maintain the road had resulted in water draining off the road onto the plaintiff's nearby property. *Id.* at 608-09. The county argued in defense that the plaintiff had failed to give the county a timely tort-claim notice as required under ORS 30.275(2)(b) because the plaintiff should have provided notice more than three years before when he first became aware of a water issue on his property that was caused by a specific county repair of a neighboring road. *Id.* at 609-10. On appeal, we concluded that, while litigation over whether there was a negligent repair of the road would be barred because it arose from a discrete act over three years prior, the claim for ongoing negligent failure to maintain the road was not barred

because it was a continuing tort. *Id*. at 612-13. In reaching that conclusion, we distinguished between a "continuing tort" where there is "no single accident or occurrence giving rise to the claim" and "repetitious discrete torts which result in similar but separate injuries." *Id*. at 613. We concluded that the ongoing failure to maintain a road was a continuing tort, not "repetitious discrete torts." *Id*.

In *Davis v. Bostick*, 282 Or 667, 671-72, 580 P2d 544 (1978), the Supreme Court explained that "at the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." In *Davis*, the plaintiff brought an action against her former husband for "an intentional course of conduct designed to inflict emotional stress and mental anguish." *Id*. at 669. That conduct consisted of 10 incidents of physical and mental abuse, including four earlier ones that would have been barred by a two-year statute of limitation unless the entire course of abusive conduct was a continuing tort. *Id*. at 669-70. The Supreme Court concluded that each alleged act of physical or emotional abuse was "separately actionable" because each caused "harm" and did not reach "the level of actionability only at the end of the series" of misconduct or only after the cumulative effect of the wrongful behavior. *Id*. at 672.

Turning to the application of that law here, we conclude that plaintiff alleges wrongful conduct that is akin to "repetitious discrete torts which result in similar but separate injuries." *Holdner*, 51 Or App at 613. The Lottery's alleged wrongful conduct is substantially different from a continuing tort where either no single act gives rise to the tort claim or the plaintiff's harm can be determined only at the end of a series of alleged wrongful acts based on the *cumulative* effect of the wrongful behavior. *Id*.; *Davis*, 282 Or at 671-72. Plaintiff alleged, among other things, that the Lottery manipulated the auto-hold feature to recommend strategies that had materially lower odds of winning when compared to the ideal playing strategy. Plaintiff alleged that players were damaged when they followed the auto-hold recommendations as a result of receiving both fewer winning hands and lower payouts. That damage occurs whenever a player follows a bad auto-hold recommendation and the

resulting cards dealt to the player would have resulted in a higher payout if he or she had instead utilized the optimal strategy for that hand. It is true that plaintiff and others may not suffer damages on *every* hand, but that is a function of the probability of the game and the particular cards that are drawn after using the auto-hold feature. It is not based on the cumulative effect of a continuing tort.

Plaintiff next contends that a reasonable factfinder could not determine that he knew or should have known that he had suffered harm as a result of the Lottery's conduct on February 3 because he could not have known about the harm until August 14. Plaintiff argues that he could not have understood that the Lottery was making misrepresentations in its published payout odds until he received the Lottery's August 14 response to his public records request that illustrated that the Lottery's published payout odds correlated with optimal playing strategies and not with the lower odds associated with following the auto-hold recommendations. However, that theory of misrepresentation was just one of his tort claims. As of February 3, plaintiff at the very least should have known all of the aspects of his claim that the Lottery was allegedly engaging in tortious conduct by manipulating the auto-hold feature to give bad and misleading advice that reduced a player's winnings. In determining whether the plaintiff knew or should have known about the tortious nature of the defendant's conduct, "a plaintiff does not need to identify a particular theory of recovery before the statute of limitations begins to run," including, for instance, whether the misrepresentation was negligently made or intentional. *Gaston v. Parsons*, 318 Or 247, 255 n 8, 869 P2d 1319 (1994). All that is necessary is that the plaintiff "knows or should know * * * that *a* claim exists." *Widing v. Schwabe, Williamson & Wyatt*, 154 Or App 276, 283-84, 961 P2d 889 (1998) (emphasis in original).

Plaintiff next raises two additional and somewhat related arguments regarding the timeliness of his OTCA notice and the trial court's dismissal of his tort claims against the Lottery. First, plaintiff argues that, even if the Lottery's torts were not "continuing," the trial court should not have dismissed any claims alleged based on

video poker games played *within* 180 days before plaintiff gave his October 24, 2014, tort-claim notice (or any games played between May 3 and October 24, 2014). However, as the Lottery correctly observes, plaintiff has not alleged that he played any video poker while using the auto-hold feature during that time frame. The only evidence in the record is that plaintiff used the auto-hold feature in January 2014. Second, plaintiff argues that, even if his "individual claims are dismissed, the claims of the other class members should be allowed to proceed." However, there are, at this point, no other class members because the trial court dismissed this action before certifying a class under ORCP 32. There can be no other class member claims without a representative plaintiff. *See, e.g.*, ORCP 32 A (stating that the requirements of a class action include, among other things, a "representative part[y]" whose claims or defenses are "typical of the claims or defenses of the class" and "will fairly and adequately protect the interests of the class").[5]

Based on the arguments presented to us, we conclude that the trial court did not err in determining that a reasonable juror could only conclude that plaintiff either discovered or should have discovered that he had a "potential *** claim" more than 180 days before giving notice under ORS 30.275(2)(b). *T. R.*, 344 Or at 289. The trial court, therefore, correctly dismissed plaintiff's tort claims (plaintiff's first through third claims) for failing to give timely notice under ORS 30.275(2)(b).

Continuing with the first assignment of error, plaintiff next argues that the trial court erred when it dismissed plaintiff's fourth claim for relief against the state for unjust enrichment after concluding that the claim was barred by the doctrine of sovereign immunity. Under that doctrine, and without reference to other provisions of our constitution, the state enjoys immunity from claims except those to which it consents by legislative action. *Anderson v. Dept. of Rev.*, 313 Or 1, 6-7, 828 P2d 1001 (1992) (stating that, under Article IV, section 24, of the Oregon Constitution, the state

---

[5] Prior to dismissal, plaintiff also did not ask the trial court to either add or substitute another representative plaintiff on behalf of the class who may have timely claims.

is immune from lawsuit).[6] Plaintiff contends that the state's waiver of immunity from contract claims under ORS 30.320 also waives the state's immunity from "quasi-contract claims," such as unjust enrichment claims.

We begin by noting that the state, subject to certain limitations, waived immunity from tort claims and, in doing so, defined a tort to mean "the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract." ORS 30.260(8).[7] Thus, the state's waiver of immunity from tort claims excludes both contract and quasi-contract claims. However, the legislature has separately provided for waiver of the state's sovereign immunity from claims made solely "upon a contract":

> "A suit or action may be maintained * * * against the State of Oregon by and through and in the name of the appropriate state agency upon a contract * * * made by such agency and within the scope of its authority; provided, however, that no suit or action may be maintained against * * * the State of Oregon upon a contract relating to the care and maintenance of an inmate or patient of any * * * state institution."

ORS 30.320. That waiver does not extend to quasi-contract claims. *See Anderson*, 313 Or at 8 (stating that, "with regard to [plaintiff's] claims * * * in quasi-contract * * * [plaintiff] point[s] to no statute that waives the state's sovereign immunity to such claims").

Through its text, ORS 30.320 waives claims against the state that are "upon a contract * * * made by [a state] agency." Significantly, quasi-contract claims, such as plaintiff's claim for unjust enrichment, are not claims asserted "upon a contract * * * made by" the state, but rather are claims that may be asserted even in the *absence* of an express contract. A quasi-contract claim is "not a contract action at all but a claimed obligation owed to plaintiff to prevent [defendant's] unjust enrichment at plaintiff's expense."

---

[6] Article IV, section 24, provides, in relevant part, that "[p]rovision may be made by general law, for bringing suit against the state, as to all liabilities originating after, or existing at the time of the adoption of this Constitution."

[7] ORS 30.260 has been amended since plaintiff filed the current action; however, because that amendment does not affect our analysis, we refer to the current version of the statute in this opinion.

*Washer v. Clatsop Care and Rehab. District*, 304 Or 3, 5, 741 P2d 493 (1987). A quasi-contract claim is based on an implied contract, but is not a claim made directly "upon a contract made" by another party. *See Kashmir v. Patterson*, 43 Or App 45, 47-48, 602 P2d 294 (1979), *aff'd*, 289 Or 589, 616 P2d 468 (1980) (stating that a quasi-contract "is not consensual. It is not a contract. It is a remedial device * * * to * * * prevent unjust enrichment"). Indeed, a quasi-contract occurs in the absence of an express contract on the same terms. *Ken Hood Construction v. Pacific Coast Construction*, 203 Or App 768, 772, 126 P3d 1254, *rev den*, 341 Or 366 (2006).

Plaintiff contends that the state has waived sovereign immunity for implied contract claims and relies upon *Comcast of Oregon II, Inc. v. City of Eugene*, 346 Or 238, 209 P3d 800 (2009) (*Comcast II*) to support that argument. However, *Comcast II* did not consider, nor could it have considered based on the facts presented, whether the legislature has waived the state's sovereign immunity from quasi-contract claims. Rather, *Comcast II* held only that such claims against the City of Eugene are not subject to the tort-claim notice requirements because a claim in quasi-contract is not a "tort" under ORS 30.260(8).[8] *Id.* at 251. Accordingly, based on the arguments presented to us, we agree with the trial court that the state has not waived its

---

[8] *Comcast II* involved a claim for "money had and received" asserted by Comcast against the City of Eugene. 346 Or at 242. ORS 30.320 waives sovereign immunity for claims against the state or a county "upon a contract made by" the state or a county. Under the same statute, however, "any other public corporation mentioned in ORS 30.310" may be liable "for an injury to the rights of the plaintiff arising from some act or omission of such other public corporation within the scope of its authority." In addition to referring to the "State of Oregon or any county," ORS 30.310 refers to an "incorporated city, school district or other public corporation of like character." While we do not reach the issue, the waiver of immunity for claims against certain "other public corporations" under those statutes may be different than the waiver of immunity for contract claims against the state and counties.

In a footnote in his reply brief, plaintiff contends for the first time that the Lottery is "of like character" to the other public corporations mentioned in ORS 30.310. Even assuming that that argument was preserved, we would reject it as the Lottery is an entity of state government. *See* ORS 461.100 (stating that "[t]he Oregon State Lottery Commission is hereby created in state government"); ORS 461.150 (stating that the Governor shall appoint the Oregon State Lottery director subject to confirmation by the state senate).

sovereign immunity from unjust enrichment claims, and, therefore, the trial court did not err by dismissing plaintiff's unjust enrichment claim against the Lottery.[9]

We next turn to plaintiff's second assignment of error. Plaintiff argues that the trial court erred in awarding prevailing party fees to the manufacturers. Because that is an issue of statutory interpretation, we start, as usual, with the text and context of the statute. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). ORS 20.190 provides, subject to certain exceptions, that a party who prevails in a civil action has a right to recover prevailing party fees if that party also has a right to recover its costs and disbursements. However, one exception provides:

"(6)   The prevailing party fees provided for in this section may not be awarded in the following proceedings:

"(a)   A class action proceeding under ORCP 32."

ORS 20.190(6)(a). Plaintiff argues that the exception applies here because this was filed as a class action proceeding under ORCP 32. The manufacturers contend that this action only becomes a class action proceeding once it is certified as such. There is some ambiguity in the text whether the legislature intended ORS 20.190(6)(a) to apply to a class action proceeding *asserted* under ORCP 32 or a class action proceeding *certified* under ORCP 32. While, as discussed above, no class was ever certified, this case was alleged as a class action under ORCP 32.

The context of the statute, however, provides clear guidance. The context of ORS 20.190(6)(a) includes other statutes that limit the right to apply for a similar award of costs or fees in class actions. *See Hanson v. DMV*, 278 Or App 599, 602, 375 P3d 563, *rev den*, 360 Or 697 (2016) (stating that the context of a statute includes other provisions of

_____

[9] As a final argument on the first assignment of error, plaintiff argues that he should be "entitled to re-plead claims against the [manufacturer] defendants for acting in concert with the Lottery if Plaintiff's tort claims against the Lottery are allowed to move forward." However, because we conclude above that plaintiff's tort claims against the Lottery are barred by his untimely tort-claim notice, we do not need to reach that issue. Similarly, we do not decide whether the trial court was correct in alternatively dismissing plaintiff's tort claims against the Lottery on the merits.

related statutes). "Typically, only statutes that were already enacted at the time the statute at issue was enacted are pertinent context for interpreting that statute." *Id.* at 603 (internal quotation marks omitted).

At the time the legislature enacted ORS 20.190(6)(a) in 1995, the legislature, when limiting a prevailing defendant's ability to recover fees or costs in class actions in other statutes, consistently limited a defendant's right to seek costs or fees solely to proceedings that were "maintained as a class action pursuant to ORCP 32." *See, e.g.,* ORS 59.115(11) (stating that the court may not award attorney fees to a prevailing defendant if the action is "maintained as a class action pursuant to ORCP 32"); ORS 646.638(4) (stating same); ORS 646.780(4) (stating that the court may not award certain fees or costs to a prevailing defendant if the action is "maintained as a class action pursuant to ORCP 32");[10] ORS 759.720(2) (stating that the court may not award attorney fees to a defendant if the action "is maintained as a class action pursuant to ORCP 32"); ORS 759.900(2) (stating same).

Under ORCP 32, both in 1995 and today, the trial court decides whether to "maintain[]" or certify the class action if the requirements of ORCP 32 are met. *See* ORCP 32 B (stating that "[a]n action may be *maintained* as a class action if the prerequisites of section A of [ORCP 32] are satisfied" and the court finds the class action is superior to other available methods for fair and efficient adjudication (emphasis added)). Thus, in related contexts, the legislature has limited a defendant's right to recover potential fees or costs where the class action was "maintained" or certified as a class action under ORCP 32 by the court, but ORS 20.190(6)(a) more broadly limits a party's right to recover prevailing party fees in any "class action proceeding under ORCP 32." Based on that context, we are persuaded that the legislature, by not using its more common language that bars a prevailing defendant from recovering fees in a proceeding "maintained as a class action pursuant to ORCP 32"

---

[10] ORS 59.115, ORS 646.638, and ORS 646.780 have all been amended since 1995. However, because those amendments do not affect our analysis, we refer to the current versions of those statutes.

and instead barring recovery of prevailing party fees in "[a] class action proceeding under ORCP 32," intended to prohibit prevailing party fee awards in proceedings that are *either* alleged or maintained as class action proceedings under ORCP 32.[11] We, therefore, agree with plaintiff that the trial court erred in awarding the manufacturers their prevailing party fees because this proceeding was alleged as a class action proceeding under ORCP 32.

Supplemental judgment reversed and remanded; otherwise affirmed.

---

[11] The parties did not cite any legislative history in support of their arguments regarding ORS 20.190(6)(a). We also found no relevant legislative history in our review of the legislature's enactment of that statute.